[No. 11386. Department One. — May 28, 1888.]

THE PEOPLE EX REL. ATTORNEY-GENERAL, APPELLANT, v. PHILIP A. ROACH, ADMINISTRATOR ETC. OF THOMAS H. BLYTHE, DECEASED, ET AL., RESPONDENTS.

ESCHEAT — PREMATURE PROCEEDING TO ESTABLISH. — A proceeding by the attorney-general, brought in behalf of the state, under title 8, part 3, of the Code of Civil Procedure, for the purpose of obtaining a decree declaring that the property of an alien dying intestate had escheated to the state, is premature if commenced within five years after the death of the intestate.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Attorney-General Marshall*, and *William M. Pierson*, for Appellant.

*John A. Wright*, and *McAllister & Bergin*, for Respondents.

PATERSON, J.—On April 4, 1883, Thomas H. Blythe, a citizen of the United States and resident of the city of San Francisco, died intestate, leaving property valued by the appraisers at $2,490,236.54. Defendant was appointed administrator of the estate on June 12, 1883, and duly qualified. On June 23, 1883, the notice to creditors to present their claims within ten months from said date was first published. Before the expiration of said ten months, viz., on March 21, 1884, the information herein was filed by Attorney-General Marshall in behalf of the state of California, praying for a decree that said property has escheated to the state; that defendants, about thirty in number, be enjoined from asserting any claim or interest in or to said estate.

The information alleges the death of T. H. Blythe; that he was the owner in fee of the property described; that he was never a citizen of the United States, but was an alien and a subject and citizen of the kingdom of Great Britain and Ireland; that he died without leaving any wife, kindred, or heirs to succeed to his estate; that defendant is the administrator of the estate; that the estate is still open and undistributed; that defendant has collected rents amounting to about ninety thousand dollars; that Florence Blythe and others claim to be the heirs at law of Thomas H. Blythe; that none of the defendants are heirs, or entitled to share in or succeed to his estate; that the state of California is by law entitled to the estate.

A motion was made to dismiss the information, and upon the hearing thereof a showing was made to the court of the citizenship of Blythe, — that he was a citizen of the United States and a resident of the state of California; that the defendant Roach was duly appointed administrator; that notice to creditors was first published June 23, 1883, and inventory filed on the 15th of November, 1883; that eighty-four claims had been presented to the administrator against the estate, amounting in the

aggregate to the sum of six hundred and eighteen thousand dollars; that divers suits are pending against the administrator as such; that applications for the sale of portions of the estate, valued at one hundred and fifty thousand dollars, had been made, etc.

The court thereupon denied the application for a restraining order, and dismissed the information.

We think that the judgment should be affirmed.

1. In *State* v. *Smith*, 70 Cal. 156, Mr. Justice McKinstry in his opinion for the court said: "All aliens take by succession. (Civ. Code, sec. 671.) The failure of a non-resident alien to 'appear and claim' within five years after descent cast operates a bar of his right to assert any title in the property as against the state. And this, not on the idea that the property has escheated to the state, as of the date of the death of the ancestor, but because by the law the non-resident takes subject to the loss of his right by a failure to make claim within the five years. . . . . It would seem to follow that a non-resident alien would have no defense to an inquest to 'vest the title in the state' in the nature of office found, except a defense based on his appearance and claim within the five years, and it necessarily follows that a proceeding brought by the attorney-general under title 8, part 3, is premature if commenced within the five years after the death of the ancestor."

That case is conclusive of this, unless, as claimed by appellant, the allegation that there are no heirs at all makes this a case of an absolute escheat, and the cause of action one which accured the moment Blythe died. But was the court bound by this averment? Is it possible in law or in fact for a party to know that there are no heirs so soon after the death of the intestate? A fact impossible in law cannot be admitted by demurrer. (*Louisville & N. R. R. Co.* v. *Palmes,* 109 U. S. 253.) Alien heirs have five years after descent cast to appear and claim their right by succession. Can any one affirm

within that time that there are no heirs? Does not the affirmation of such a proposition presuppose acquaintance with every non-resident alien and his genealogy? The averment is clearly one of fact impossible in law, and which cannot be admitted by demurrer. In estates of over ten thousand dollars in value, creditors have ten months within which to present their claims. Would the allegation—in any proceeding had within that time, —that there are no claims against the estate conclusively establish, upon demurrer or motion to dismiss, that no claims exist? How, until the expiration of the time allowed by law, is it possible for any one to say there are no creditors? The ascertainment of such a fact is practically impossible, and as a matter of law cannot be admitted on demurrer or motion to dismiss.

The legislature did not intend that a proceeding of this kind should be commenced before the expiration of five years. The codes of this state, like all other laws, proceed upon the theory that things have happened according to the ordinary course of nature and the ordinary habits of life; and it is a presumption of law that every intestate has left some one on earth entitled to claim as his heir, however remote. (Code Civ. Proc., sec. 1963, subd. 28; Abbott on Trial Evidence, 85, 86.) In every provision of our codes relating to the administration of estates, and germane to the subject, this presumption is indulged. These provisions are numerous, and it is unnecessary to copy them here. We cite a few sections: Code Civ. Proc., secs. 1365–1371, 1726–1739; Civ. Code, secs. 1405–1407.

Every provision is made for administration upon the estates of persons dying intestate. Provision is made for the election of an officer, and his duties are prescribed for the administration of all estates where parties in interest omit or neglect to administer thereon. Every public administrator "must take charge of the estates of decedents who have no known heirs." (Code Civ. Proc.,

sec. 1726.) . He is subject to the control and direction
of the court.   If, after the final settlement of the affairs
of any estate, there be no known heirs or claimants
thereof, the county treasurer must pay into the state
treasury all property in his hands belonging to the
estate, upon order of the court; *and if any such moneys or*
*property escheat to the state, they must be disposed of as other*
*escheated estates.* .(Code Civ. Proc., secs. 1739–1743.)   It
is clear from these provisions that the estates of persons
dying without heirs are as much subject to the operation
of the law as other estates.   It is apparent that after the
public administrator has taken charge of estates which
have escheated or are liable to escheat, he alone is en-
titled to proceed with administration of the estate as
provided in the code.   Section 1405 of the Civil Code
provides that "when succession is not claimed as pro-
vided in the preceding section, the court on information
must direct the attorney-general to reduce the property to
the possession of the state, or to sell and deposit the pro-
ceeds in the state treasury for the benefit of the non-
resident foreigner, to be paid to him whenever, within
five years after such deposit, proof to the satisfaction of
the state controller and treasurer is produced that he is
entitled to succeed thereto."   This section would seem
to imply that it is only when succession is not claimed
within five years after the death of the decedent, that
proceedings may be commenced to reduce the property
to the possession of the state.   Section 1406 of the Civil
Code provides: "If no one succeeds to the estate or the
proceeds, as herein provided, the property of the decedent
devolves and escheats to the people of the state, and is
placed by the state treasurer to the credit of the school
fund."   Thus it would appear that the state will take
possession of property when no one claims it within five
years after the death of the decedent, but that the prop-
erty will not escheat until five years thereafter.   Section
1407 confirms this view.   It provides that "real property

passing to the state under the last section, whether held by the state or its officers, is subject to the same charges and trusts to which it would have been subject if it had passed by succession, and is also subject to all the provisions of title 8, part 3, of the Code of Civil Procedure." The procedure in the last section referred to is the procedure which is here instituted by the attorney-general.

Administration is clearly one of the "charges and trusts" to which the property would have been subject, if it had passed by succession. Title 8, referred to in section 1407, *supra,* makes no provision for the payment of funeral expenses, expenses of last illness, or the debts of the decedent.

There must be a certain and uniform system of administration on the property of decedents. For this purpose, chiefly, public administrators have been appointed and required to give bonds for the faithful discharge of their duties; and creditors have been given the right of administration. We think that the information filed by the attorney-general is premature.

Judgment affirmed.

SEARLS, C, J., and McKINSTRY, J., concurred.