[Sac. No. 917.   In Bank.—May 6, 1904.]

In the Matter of the Estate of JAMES MINER, Deceased. MRS. HARRIET N. CONNELL et al., Respondents, v. E. P. COLGAN, State Controller, et al., Appellants.

ESTATES OF DECEASED PERSONS—NON-APPEARANCE OF HEIRS—DEPOSIT OF MONEY IN STATE TREASURY—ACTION OF ESCHEAT.—The deposit in the state treasury, by order of the court, of money comprising the residue of the estate of a deceased person administered by the public administrator, and for the distribution of which no heirs have appeared, does not of itself work an escheat to the state, nor constitute a decree of distribution to the state. The state does not come in by way of succession; and an action of escheat is necessary to vest title in the state, whether the property is real or personal.

ID.—RIGHT OF HEIRS—CITIZENS—STATUTE OF LIMITATIONS.—Where no action has been brought to escheat the money to the state, there is no statute of limitations which bars the right of heirs who are citizens of the United States to appear and enforce their right to the money of the estate in the state treasury, notwithstanding the lapse of more than twenty years after its deposit therein. [Henshaw, J., McFarland, J., and Lorigan, J., dissenting.]

APPEAL from a judgment of the Superior Court of Sacramento County.   Joseph H. Hughes, Judge.

The facts are stated in the opinion of the court.

Tirey L. Ford, Attorney-General, U. S. Webb, successor, and George A. Sturtevant, Deputy Attorney-General, for Appellants.

James Taylor Rogers, James T. Houx, and Houx & Barrett, for Respondents.

·VAN DYKE, J.—The person known as James Miner died in April, 1875, intestate.   He had been a resident of the city and county of San Francisco at the time of his death, and his estate was administered upon by the public administrator of said city and county.   In May, 1879, the public administrator filed his final account, with a petition for distribution of the estate, the estate consisting of $3,502.95 in cash.   Upon

this petition being filed, notice was given according to law of the hearing of the petition, and on July 7, 1879, the court made and entered its decree settling the account of the public administrator, and on July 10th following the said probate court entered an order reciting that the said estate had been fully administered, and by the production of satisfactory vouchers on the part of the public administrator it was shown that he had paid all sums of money due from him, and that he had deposited the residue of said estate, amounting to the sum of $3,482.45, with the county treasurer of said city and county, and ordered that the said administrator and his sureties be released and discharged from all liability thereafter to be incurred, and that said administration was complete and the trust settled and closed. The said probate court on the following day—to wit, July 11, 1879—entered the following order in the matter of said estate: "The affairs of the estate of James Miner, deceased, having been finally settled, and there being no heirs or other claimants thereof, it is ordered, that the county treasurer of this city and county forthwith pay into the state treasury all moneys and effects in his hands belonging to said estate." The amount of money so paid over to the state treasurer belonging to said estate was the sum last mentioned,—to wit, $3,482.45; and on November 26, 1879, the money in question was deposited in the state treasury in accordance with the foregoing order.

The petition in this proceeding on behalf of Harriet N. Connell and others, claiming to be the heirs of said Miner, deceased, was filed in the superior court of the county of Sacramento, July 15, 1899. In said petition it is alleged that the true name of the person designated in the probate proceedings as James Miner was, as a matter of fact, Cyrus Laselle Miner; that petitioners are his next of kin, and entitled to inherit his estate; that they are all native-born citizens of the United States, and that information relative to the death of said Miner had only been conveyed to them within the last year preceding the filing of said petition; and they asked a decree declaring them entitled to possession and ownership of the funds so deposited in the state treasury by order of the probate court in said estate.

The attorney-general, on behalf of the state, appeared in said proceeding, and, after an amended petition had been filed

therein, demurred to the same. His demurrer being over-ruled, he filed an answer to said amended complaint. Upon the trial of the case the court found, among other matters, that each and all of the allegations of said amended petition is and are true, and that said proceeding is not barred by the statute of limitations, and "That no proceedings by the state of California to declare the said deposit an escheat has ever been commenced, other than is shown and stated in the findings hereinabove made. · That the said deposit hereinbefore referred to now stands, and ever since it was paid into the treasury has stood to the credit of the estate of James Miner, upon the books of the controller and state treasury, and has never been used at any time as part of the school fund of said state." And as a conclusion of law the court found that the petitioners were entitled to judgment against the said controller and state treasury for the sum of money so deposited, and entered a judgment accordingly. This appeal is taken from the judgment so rendered, upon the judgment-roll alone.

The question presented on this appeal is whether the decree in the probate court in the estate of James Miner, deceased, has the effect of a judgment so as to vest the title in the state, *ipso facto*, and without the necessity of an action in the nature of an escheat. For the purpose of further considering this question a rehearing was granted.

After hearing further argument, and a re-examination of the case, we have arrived at the conclusion that the final order of the probate court did not operate to vest the title to the fund so deposited in the state treasury in the state, as upon a decree in an action brought to escheat the same. The attorney-general, on behalf of the appellants, places much stress upon section 1737 of the Code of Civil Procedure. That section, after defining the duties of the public administrator, in reference to depositing money received by him in the settlement of estates of deceased persons in the county treasury for safe-keeping, in the last clause declares: "After a final settlement of the affairs of any estate, if there be no heirs, or other claimants thereof, the county treasurer shall pay into the state treasury all moneys and effects in his hands belonging to the estate, upon order of the court; and if any such moneys and effects escheat to the state, they must be

disposed of as other escheated estates." He also lays much stress upon the last clause of section 1386 of the Civil Code. That section is under the title relating to succession, and, after enumerating the parties entitled to succeed to an estate, and the order of succession, in the preceding subdivisions, it is declared in the last one: "If the decedent leave no husband, wife, or kindred, and there be no heirs to take his estate or any portion thereof, . . . the same escheats to the state, for the support of common schools." This would seem to imply that, notwithstanding the order of court and deposit of the money in pursuance thereof into the state treasury, the escheat is still in suspense, and will not take place except in consequence of some further procedure, and upon some contingency not yet determined. In this case, however, although the public administrator in rendering his account asked for distribution, the order of the probate court does not comply with such request, and does not order a distribution, but simply directs the payment of the money remaining in the public administrator's hands into the county treasury, and thereafter, as already shown, directed the same to be paid by the county treasurer into the state treasury. Sections 1665 and 1666 of the Code of Civil Procedure prescribes the general rule for the distribution of estates among the heirs, devisees, and legatees, and a decree as to them, of course, is conclusive. But in this case the court did not distribute the fund in question to the state, as being entitled thereto under the law of succession, or otherwise. The order was, that the county treasurer pay into the state treasury "all moneys and effects in his hands belonging to said estate." This declaration on the part of the probate court in its order shows very clearly that it was not the understanding of said court that the effect of its decree or order was in the nature of an escheat of the funds so deposited to the state; but rather that it was to be held on deposit as the property of said estate subject to the claims of the heirs of said decedent who might come forward to claim the same within the time allowed by law. Section 672 of the Civil Code declares: "If a non-resident alien takes by succession, he must appear and claim the property within five years from the time of succession, or be barred. The property in such case is disposed of as provided in title VIII, part III, Code of Civil Procedure." The claimants in this

case, as alleged and found, were native-born American citizens, and as to them there seems to be no limit within which they may come forward and claim the property to which they have succeeded at any time before a judgment or decree in a proper proceeding to escheat has been entered. This section of the Civil Code also declares that when the claim to the property is barred as to the right of succession it is disposed of as provided under the title in reference to escheated estates in the Code of Civil Procedure. (Secs. 1269 to 1272, inclusive.) Section 474 of the Political Code declares, among other duties of the attorney-general, that it shall be his duty "to institute investigation for the discovery of all real and personal property which may have or should escheat to the state, and for that purpose shall have full power and authority to cite any and all persons before any of the superior courts of this state to answer investigations and render accounts concerning said property, real or personal," and "When any real or personal property shall be discovered, which should escheat to the state, the attorney-general must institute suit in the superior court . . . to escheat the same to the state. The proceedings in all such actions shall be those provided for in title eight, part three, Code of Civil Procedure." The Civil Code, under the title of succession (sec. 1383), declares: "Succession is the coming in of another to take the property of one who dies without disposing of it by will." "The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the probate court, and to the possession of any administrator appointed by that court for the purposes of administration." (Sec. 1384.) Then in section 1386 the different parties are enumerated who are entitled to come in by succession and the order in which they succeed. The state, however, does not come in by way of succession, but in the event of the absence of all who are entitled to come in by succession, whether the property be real or personal, it goes to the state by escheat.

The provision of the Code of Civil Procedure in reference to escheats, taken by itself, might imply, from the language used, that such action was only necessary where real estate was involved, but the provisions of the various codes bearing upon the same subject-matter must be construed *in pari*

*materia*. (Pol. Code, sec. 4480.) Under this rule, and considering the various provisions of the several codes bearing upon the subject, it seems very clear that in every case of a failure of succession for want of heirs or kindred of the decedent an action of escheat becomes necessary to vest the title in the state, whether the estate so escheated consists of real or personal property. And this is the view heretofore expressed by this court in *People* v. *Roach*, 76 Cal. 294, where it is said: "If, after the final settlement of the affairs of any estate, there be no known heirs or claimants thereof, the county treasurer must pay into the state treasury all of the property in his hands belonging to the estate, upon order of the court; and if any such moneys or property escheat to the state, they must be disposed of as other escheated estates." Under the provisions of the Code of Civil Procedure in reference to escheats, it is provided that a person not a party or privy to the proceeding may, within twenty years after the judgment in such proceeding, file a petition in the superior court of the county of Sacramento, showing his claim or right to the property or the proceeds thereof; but this limitation does not apply to the case at bar, for the reason that no action has been brought or judgment rendered in favor of the state under the provisions of the code. On the contrary, the money in question, being the proceeds of said estate, simply remained on deposit in the state treasury, and in such case, as already stated, there seems to be no limitation as against citizens of the United States bringing an action to establish their right to succeed to or recover the same.

The judgment is affirmed.

Beatty, C. J., Shaw, J., Angellotti, J., concurred.

We dissent, and adhere to the following opinion heretofore rendered in Bank.

Henshaw, J., McFarland, J., Lorigan, J.

"HENSHAW, J.—The above-named James Miner died in April, 1875, intestate, and without known heirs. Having been a resident of the city and county of San Francisco at the time of his death, his estate was administered upon by the public administrator of that city and county. About the month of May, 1879, the administrator filed his final account

and a petition for the final distribution of the estate, which latter consisted of some $3,502.95 in cash. The petition stated 'that your petitioner has no knowledge of or information concerning the heirs or relatives of said decedent, if any such there be.' Thereafter notice was duly given according to law of the hearing of the account and petition, and the court, on July 8, 1879, made and entered its decree settling the account. It found 'that diligent search and inquiry have been made by the administrator to ascertain the existence and whereabouts of the heirs of said decedent, if any, but no information concerning any heir of decedent has been obtained'; and decreed 'that there are no heirs or other claimants of the estate of said James Miner, deceased.' On July 10, 1879, the probate court made its further order reciting that 'said administrator has paid all sums of money due from him, and delivered up under the order of court all property of the estate to the parties entitled, and performed all acts lawfully required of him; that said administrator has deposited the residue of said estate, amounting to $3,482.45, with the county treasurer of this city and county, and that said money is now on deposit with the said county treasurer.' The administrator and his sureties were then discharged from all further liability, the administration decreed to be settled and closed, and the letters theretofore granted were vacated. On the following day, July 11, 1879, the same court made its order reciting that the affairs of the estate of James Miner, deceased, had been fully settled, 'and that there being no heirs or other claimants thereof,' it is ordered that the county treasurer of said city and county forthwith pay into the state treasury all moneys and effects in his hands belonging to said estate. This was in effect a distribution to the state. Thereafter, on or about November 26, 1879, the money was deposited in the state treasury in accordance with this order. Nothing further was done in connection with the estate until more than twenty years had elapsed after the final order of the probate court referred to, when a petition was filed on July 15, 1899, in the superior court of Sacramento County by respondents Harriet N. Connell et al., in which it was alleged that they were the next of kin and heirs at law of James Miner. A decree was sought establishing their rights as such heirs, and requiring the state controller and state treasurer to pay over the money

of the estate for their benefit. The appellants answered, and on hearing the matter the superior court of Sacramento County found the facts substantially as they are hereinbefore stated, and in addition thereto found 'that no proceeding by the state of California to declare the said deposit an escheat has ever been commenced other than is shown as stated in the findings hereinabove made.' 'That the said deposit hereinabove referred to now stands, and ever since it was paid into the treasury has stood to the credit of the estate of James Miner upon the books of the controller and state treasurer, and has never been used at any time as part of the school fund of said state.'

"Respondents contend in support of the judgment given in their favor that title VIII, part III, of the Code of Civil Procedure (sections 1269 and 1272) makes provision for proceedings relative to escheated estates; and while in terms these provisions have reference only to real estate, yet, by section 474 of the Political Code, defining the duties of the attorney-general, personal property is expressly brought under the provisions of these sections. In pursuance of this argument, respondents further contend that section 1272 of the Code of Civil Procedure contains the statute of limitations applicable to cases such as this, which statute is couched in the following language: 'Within twenty years after judgment in any proceeding had under this title, a person not a party or privy to such proceeding may file a petition in the superior court of the county of Sacramento, showing his claim or right to the property or the proceeds thereof.' And finally respondents deny that any force or effect is to be given to the orders and decrees of the court in probate touching the escheating or reversion of the estate. They insist that the law contemplates a separate and distinct action prosecuted by the attorney-general, and that until such action is brought the twenty years statute of limitations does not commence to run. It is of course necessary for respondents to take, and to maintain, this position because, if the effect of the decree in probate is that of a judgment in escheat or in reversion, respondents not having commenced their action within twenty years after the entry of such decree are barred, even by the provisions of section 1272 of the Code of Civil Procedure.

"It may for the purposes of this consideration be con-

ceded, though not decided, that by force of section 474 of
the Political Code the provisions of title VIII, part III, of
the Code of Civil Procedure are applicable as well to cases
of personal property as to those of real estate; but still the
result for which respondents contend could not logically follow
without depriving of effect many of the provisions of the codes.
Section 1386 of the Civil Code at the time the decree in the
estate of Miner was entered, provided as follows:    'When
any person having title to any estate not otherwise limited by
marriage contract, dies without disposing of the estate by will,
it is succeeded to and *must be distributed*, unless otherwise
provided in this code and the Code of Civil Procedure, subject
to the payment of his debts, in the following manner: . . .
10. If the decedent leave no husband, wife, or kindred,
. . . the estate *escheats* to the state, for the support of the com-
mon schools.'   By section 1726 of the Code of Civil Procedure,
the public administrator is authorized to take charge of estates
of persons dying intestate without known heirs.   By section
1728 of the Code of Civil Procedure all persons are required
to notify the public administrator of the existence of such
an estate.   By section 1729 of the Code of Civil Procedure
the public administrator is required to administer upon such
estates, and by section 1737 of the Code of Civil Procedure
he is required to keep the moneys of such estates on deposit
in the county treasury, to pay them out only on an order of
the probate court, and to deposit the balance in the state
treasury on an order of the court, if there be no heirs or other
claimants.   In such estates the public administrator is required
to render his final account, and upon the settlement of the
final account the probate court *must proceed to distribute* the
estate.   (Code Civ. Proc., sec. 1665.)   Such distribution is
final (Code Civ. Proc., sec. 1666), and must be made to the
persons entitled thereto.   (Code Civ. Proc., sec. 1665; Civ.
Code, sec. 1386.)   What is to be done with the funds in the
hands of the public administrator upon final settlement of
such an estate, when no heirs or other just claimants appear,
is answered by section 1737 of the Code of Civil Procedure,
which provides:  'After a final settlement of the affairs of any
estate, if there be no heirs, or other claimants thereof, the
county treasurer shall pay into the state treasury all moneys
and effects in his hands belonging to the estate, upon order

of the court; and if any such moneys and effects escheat to the state, they must be disposed of as other escheated estates.'

"It thus appears that upon the court in probate is imposed the duty to determine the person or persons who succeed to the estate of an intestate, and if such intestate die without known heirs, then equally is it the duty of the court to so declare, and to make its order whereby such property reverts to the state as ultimate heir or successor. Thus, as is said in *Hamilton* v. *Brown*, 161 U. S. 269: 'But the whole object in proceedings for escheat, as in proceedings of administration, is to ascertain who are entitled to the estate of a deceased person; in proceedings of administration, to distribute the assets, after payment of debts, among those who come forward and prove themselves to be next of kin; in proceedings for escheat, to ascertain and determine, once for all, so far as concerns the title in the land itself, whether the former owner left no heirs or devisees, that being the single question on which depends the issue whether or not the land has escheated to the state. . . . As to personal property, indeed, a judgment *in rem*, after notice by publication only, might not bind persons who had no actual notice of the proceedings, unless the thing had been first seized into the custody of the court. . . . When a man dies, the legislature is under no constitutional obligation to leave the title to his property, real or personal, in abeyance for an indefinite period; but it may provide for promptly ascertaining, by appropriate judicial proceedings, who has succeeded to his estate. If such proceedings are had, after actual notice by service of summons to all known claimants, and constructive notice by publication to all possible claimants who are unknown, the final determination of the right of succession, either between private persons, as in the ordinary administration of estates, or between all persons and the state, as by inquest of office or similar process, to determine whether the estate has escheated to the public, is due process of law.'

"Under our probate system it seems evident from the sections above quoted and referred to, that the law contemplates, at least as to personal property, that where no heirs or other claimants come forward to establish their claims, there shall be a reversion to the state of the title to such property. The

moneys or other movables are by order of the court to be paid into the state treasury. The decree of the court in probate is in the nature of a judgment *in rem*, given by a court of competent jurisdiction, which has seized into its control the personal effects to be disposed of. Under such circumstances the decree is binding upon the whole world. It is certainly a liberal enough interpretation of the law to say that a claimant has twenty years after that time in which to make his proofs and recover the property; but in this case the action instituted for that purpose was not commenced until more than twenty years had expired from the date of the entry of the decree.

"And for this reason judgment is reversed, with directions to the trial court to enter its judgment for appellants."

With the foregoing opinion, Beatty, C. J., filed the following:—

I dissent. There has never been any decree of distribution of the estate of Miner under the provisions of sections 1665-1666 of the Code of Civil Procedure. The public administrator, it is true, in rendering his final account, asked for distribution, but the probate court disregarded that part of his petition and simply made the order prescribed by section 1737, directing the county treasurer to pay over the residue of the fund to the state treasurer. The court, in other words, gave to these provisions of the code the only construction which, in my opinion, they will bear. Sections 1665-1666 prescribe the general rule for the *distribution* of estates among heirs, devisees, and legatees, and the decree as to them is made conclusive. Section 1737 makes specific provision for the temporary disposition of personal estate in those exceptional cases in which there are *no heirs* and no other lawful claimants. It is impossible to say, therefore, that within the meaning of these provisions the state takes by succession *as heir*. They have no operation except in the absence of heirs and other claimants—the absence, that is to say, of all those entitled to distribution. And what do these provisions require? Do they call for a decree analogous to a decree of distribution adjudging the title to the residue of the fund to be vested in the state? Nothing of the kind, but merely that an order should be entered directing the county treasurer to pay it over to the state treasurer—an

order having no effect except to authorize a change of deposi-
tary. There is not a word in either section warranting a dif-
ferent construction, and unless the final clause of section 1737
is denied any meaning whatever a different construction is
impossible. For after requiring that upon proof of no heirs
or other claimants the moneys of the estate shall, upon order
of the court, be paid into the state treasury the section con-
cludes as follows: *"and if any such moneys or effects escheat
to the state, they must be disposed of as other escheated
estates."* Does not this clearly imply that notwithstanding
the order of the court, and the payment in pursuance of it,
the escheat is still in suspense and will not take effect, except
in consequence of some further procedure, and upon some
contingency not yet determined? What, then, is the further
procedure thus clearly contemplated for consummating the
escheat? None other, I should say, than the procedure elabo-
rately prescribed by sections 1269 to 1272 of the Code of Civil
Procedure for escheating real property, and by section 474
of the Political Code, made equally applicable to personal
property.

It is not an unimportant consideration that, according to
the logic of the court's opinion, real as well as personal prop-
erty must be distributed to the state as heir at the close of
administration. If so, what operation can our law for deter-
mining escheats ever have? A man dies intestate and without
known heirs, leaving personal estate sufficient to pay all debts
and expenses of administration, and valuable real property
besides. In terms, section 1386 of the Civil Code covers this
real property as completely as it covers personal property.
By the provisions of the Code of Civil Procedure cited in the
court's opinion the public administrator must administer, and
the probate court must upon finding that there are no heirs,
or other claimants make a decree which is final, vesting the
title to his real property in the state. What then becomes
of the procedure to escheat real property? If it operates at
all, it must be upon real property not subject to administra-
tion. But is there any such real property? The title to all
real property is vested somewhere, either in the state, the
United States, or in their respective grantees. If it is in the
state, the United States, or a living grantee, it is not the sub-
ject either of administration or escheat. If the last grantee is

dead, it is subject to administration in the first place, for without administration it cannot be cleared of the lien of possible creditors.    But if it must be administered, it must, according to the court's opinion, be distributed to the state in default of heirs, and no other proceeding to determine the escheat is necessary or possible.    The decree of distribution is final and conclusive, and heirs subsequently discovered can never be heard to assert their claim to the inheritance.    This, it is true, is not said, but it follows necessarily from what is decided; for the twenty years allowed heirs to file their claims by section 1272 of the Code of Civil Procedure, if it applied to property distributed to the state by the probate court,—as it is held this property was,—would save the claims of these petitioners.    Because, it will be observed, the limitation does not begin to run until "*after a judgment in a proceeding had under this title*" (i. e. title VIII, secs. 1269-1272, Code Civ. Proc.), and since no such proceeding has ever been instituted that time has never even commenced to run, and these claims are barred, if barred at all, as all similar claims must henceforth be barred, by the finality of the so-called decree of distribution,—that is to say, by the order made in pursuance of section 1737 of the Code of Civil Procedure.

The necessary result of the present decision therefore appears to be that the provisions of the statute for determining escheats of real property have no application to the case of an owner dying intestate without heirs.    This is certainly contrary to the views hitherto expressed by this court (see *People* v. *Roach,* 76 Cal. 294) and generally prevailing among lawyers. In what other cases the procedure prescribed by sections 1269-1272 of the Code of Civil Procedure can apply I am at a loss to conjecture.    It certainly does not apply to lands sold by the state and forfeited for breach of condition subsequent. The claim of the purchaser in such cases is foreclosed by a proceeding specially provided; and as to lands unlawfully held by corporations contrary to section 9 of article XII of the constitution, we have expressly held there is no forfeiture, and consequently no proceeding to escheat.    (*People* v. *Stockton S. and L. Society,* 133 Cal. 611.[1])

The final result of all our decisions seems to be that the

[1] 85 Am. St. Rep. 225.

legislature has done a vain and useless thing in enacting sections 1269-1272 of the Code of Civil Procedure, a result which cannot be reached without violating somewhere a fundamental canon of statutory construction.

The truth is, that in order to sustain a doubtful and wholly unnecessary construction of section 1386 of the Civil Code a whole title of the Code of Civil Procedure is wiped off the statute-book. That section of the Civil Code is only another instance of the legislature forgetting before it gets to the end of a section containing dependent clauses what it has said at the beginning. It is like section 170 of the Code of Civil Procedure, which commences: "No justice, judge, or justice of the peace shall sit or act as such in any action or proceeding:—

"1. To which he is a party," etc.

"2. When he is related," etc.

"3. When he has been attorney," etc.

"4. When it appears," etc.

In reading this section we naturally expect to find in the fourth subdivision the definition of another case in which a judge cannot sit or act as such, but on examination we find that it must be read as a separate and independent provision for a case in which a judge may or may not sit and act as such, according to his discretion.

And so of section 1386 of the Civil Code, it commences with the general declaration that estates of intestates are succeeded to and must be distributed "in the following manner:" It then, in eight subdivisions, prescribes the succession in as many different cases, and in this connection uses such apt and appropriate language as "goes to"—"descends," etc. Finally, in subdivision 9, it provides for the case where there is neither husband, wife, nor kindred,—no heirs, that is to say,—by declaring that in such contingency the estate *escheats.* Escheat is not succession. It is the very opposite of succession. It is what happens when there is no succession. Subdivision 9 of this section must therefore be read like subdivision 4 of section 170 of the Code of Civil Procedure, as an independent provision standing by itself, applicable to the case where there is no succession and can be no distribution. Unless it is so read, there results, as has been shown, a conflict between this section and whole titles of the Code of Civil Procedure. Such

conflict is unnecessary and easily reconciled, but if it were otherwise, upon a question of procedure such as is alone involved in this case, the Code of Civil Procedure should prevail.

The judgment of the superior court should have been affirmed.