## In re McCLELLAN'S ESTATE.
## McCLELLAN v. STATE.

A person without interest in matters in litigation cannot intervene, under the rule that parties litigant are entitled to access to courts of justice without interference from persons who have no interest in the matter.

Under Code Civ. Proc. § 96, the interest which will entitle a person to intervene in a suit between other parties must be in the very matter of litigation, and must be of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment.

The courts have no power to declare a person incompetent to act as administrator, unless he is within one of the classes declared to be incompetent by Probate Code, § 84.

Probate Code, § 89, declares that any person interested may contest a petition for administration on the ground of the incompetency of the applicant, and may assert his own rights to administration. **Held,** that where the state intervened to protect an alleged right of escheat, and contested petitioner's application for administration, but did not allege that petitioner was subject to any of the grounds of incompetency specified by section 84, and did not claim administration or file a petition for the appointment of another as administrator, petitioner's competency was not in issue.

There is no statute, authorizing the appointment of a public administrator, or other representative of the state to act as administrator, in the absence of claimants of the estate.

The transfer of a proceeding for the appointment of an administrator from the probate to the circuit court by appeal does not change the status of the parties, or enlarge or change the jurisdiction of the cricuit court, or confer any new right or ground of contest or intervention.

The Legislature has full authority to prescribe the conditions under which and to designate the persons who may contest a petition for letters of administration.

The right of the state to escheat property of a person dying without heirs or next of kin is a right which accrues only after administration with reference to the residue of the estate after the payment of debts, charges, and expenses of administration.

Where petitioner applied for letters of administration on the estate of his deceased father, the state, claiming that petitioner was not the son of deceased, and that deceased died without heirs and next of kin, did not, by reason of its alleged right to the residue of the estate as an escheat, have such an interest in the proceedings for petitioner's appointment as administrator as entitled it to intervene and contest such appointment.

An amicus curiae, being heard only by leave and for the assistance of the court on a case already before it, has no right to institute any proceeding therein to bring the case from one court to another or from a single judge to the full court by exceptions, appeal, or writ of error, and has only authority to call the court's attention to facts or situations that may have escaped the court's consideration.

(Opinion filed, Feb. 15, 1911.)

Appeal from Circuit Court, Minnehaha County. Hon. CHAS. S. WHITING, Judge.

In the matter of the judicial settlement of the estate of John McClellan, deceased. Application by James S. McClellan for letters of administration on decedent's estate as decedent's son, in which the Attorney General, representing the State, intervened and contested the application, and, from an order denying the petition for McClellan's appointment and refusing a new trial, he appeals. On motion by the State to dismiss the appeal. Denied, and judgment reversed.

*Grigsby & Grigsby,* for appellant.

A person not a party to a suit cannot appear in it, and be admitted to defend against it, except on the ground that he has an interest in the results of the litigation of a direct and immediate character. Dennis v. Spencer, 53 N. W. 631; Marsh v. Green, 79 Ill. 385; Wightman v. Evanston Yaryan Co., 217 Ill. 371; Smith v. Gale, 144 U. S. 509; Gale v. Frazier, 4 Dak. 196; Horn v. Water Co., 13 Cal. 62; Lewis v. Lewis, 28 Minn. 428; Dickson v. Dows, 92 N. W. 798; Clapp v. Phelps, 19 La. 461; Todd v. Spouce, 14 La. Ann. 427. Under the statutes of South Dakota the question of whether or not property has escheated to the state must be determined by an action in the nature of "office found" before the state can assert claim of title. Rev. Code 1903, Sec. 1111 Civil Code. Under the common law without statutory provision the state had no title until after judgment under such proceedings. Fairfax v. Hunter, 7 Cranch, 604; Hamilton v. Brown, 161 U. S. 255; In re Hickman, 101 Cal. 609; In re Sanborn's Estate, 98 Cal. 103; Estate of Miner, 143 Cal. 194. The state does not come in by way of succession; and an action of escheat is necessary to vest title, whether the property is real or personal.

State v. O'Day, 69 Pac. 542; State v. Simmons, 79 Pac. 498; Midranders v. State of Texas, 64 Tex. 133; State v. Black, 21 Tex. 242; Wallanhan v. Ingersoll, 117 Ill. 123. The state was not a party to the original proceeding in county court. Intervention must begin in the court of original jurisdiction. Leonis v. Biscailuz, 101 Cal. 330; Blatchford v. Newberry, 100 Ill. 484, 99 Ill. 11; U. S. v. Patterson, 15 How. 10, 578.

*S. W. Clark, Atty. Gen., George J. Danforth, State's Atty.,* and *U. S. Cherry,* for State.

Section 1111 of the Civil Code is as follows: "If there is no one capable of succeeding under the preceding sections, and the title fails from a defect of heirs, the property of a decedent devolves and escheats to the state; and an action for the recovery of such property, and to reduce it into the possession of the state, or for its sale and conveyance, may be brought by the state's attorney in the Circuit Court of the county or judicial subdivision in which the property is situated." In the matter of the estate of John McClellan, deceased. Petition for re-hearing, made by Grigsby & Grigsby on behalf of Arkansas claimants granted (by the Supreme Court) with directions that all abstracts and briefs be served on the Attorney General and State's Attorney within and for Minnehaha county. In pursuance of these express orders and directions of the Supreme Court, the state appeared, both by its Attorney General and by the State's Attorney of Minnehaha county, and argued the case on re-hearing before the Supreme Court, and filed briefs therein. 21 S. D. 209. The state was made a party by the Supreme Court. Id. A court does not abuse its discretion in permitting a party to intervene who has any interest in the matter in litigation, and the fact that he might amply protect his rights in some other way is immaterial. Taylor v. Bank of Volga, 9 S. D. 574.

SMITH, P. J. On August 3, 1899, one John McClellan died intestate in Minnehaha county, leaving a considerable estate. Petitions for letters of administration were filed by certain persons who claimed to be nieces of the deceased, known as the "Ireland claimants," and by certain other persons who claimed to be broth-

ers and sisters of the deceased, and who are known in these proceedings as the "Canadian claimants." Upon a hearing in the probate court, one William Van Eps, for whose appointment the Ireland claimants had petitioned on February 9, 1900, was appointed administrator of the estate. From this order the Canadian claimants appealed to the circuit court of Minnehaha county. While this appeal was pending in the circuit court and on the 24th day of February, 1900, James S. McClellan, who is the appellant now before this court, filed his petition in the probate court praying that letters of administration issued to William Van Eps be revoked, and that letters be issued to himself, and claiming a preference right thereto as a son of the deceased. The petition of James S. McClellan was denied, and he thereupon perfected an appeal to the circuit court. At the next term of the circuit court the two appeals were consolidated and tried as one action. The findings of the court were in favor of the Canadian claimants, and judgment was entered granting the prayer of their petition. On the 16th day of March, 1901, the last-named findings and judgment were vacated and set aside by Judge Jones, who tried the action, and a new trial granted to the Canadian and Ireland claimants and to this appellant, James S. McClellan. The second trial in the circuit court was held in June, 1901, Hon. A. W. Campbell presiding, and resulted in a finding of the court that none of the claimants were relatives of the deceased. From this decision appeals were perfected, and in April, 1907, a decision was rendered by this court awarding a new trial to James S. McClellan, the appellant herein. The trial was brought on in the circuit court of Minnehaha county in February, 1908. At the opening of the proceedings, Mr. Orr, state's attorney of Minnehaha county, together with S. W. Clark, Attorney General, and U. S. G. Cherry, as special counsel for the state, upon an information or petition filed, moved the court that the state's attorney and Attorney General be permitted to introduce evidence in support of the various matters set forth in said petition, and to contest the petition of James S. McClellan for letters of administration. To this petition James S. McClellan filed lengthy objections to the effect that neither the

state or its officers had any legal right, interest, or authority to appear and contest petitioner's right to letters of administration. The trial court overruled these objections and ordered that the prayer of the petition be granted, to which rulings James S. McClellan excepted. Upon the trial the petition of James S. McClellan was vigorously contested, and a large amount of evidence offered in opposition thereto by the state's attorney and the Attorney General and Cherry as assistant counsel for the state. The trial court made and filed findings of fact and conclusions of law adverse to appellant, and entered its judgment denying his petition for letters of administration, on the ground that appellant was not the son of John McClellan, deceased. From this finding and the judgment entered thereon, and an order refusing a new trial, James S. McClellan appeals to this court.

At the October term, 1910, the Attorney General presented a motion to dismiss the appeal herein on the ground, as stated in respondent's brief, that "the state of South Dakota contends that no jurisdiction was acquired by this court under the attempted appeal herein," for the reason that the circuit court of Minnehaha county had lost jurisdiction before the attempted appeal. The judgment in the circuit court contains a provision: "And it is further ordered that said cause and all the files herein be remitted to the county court of Minnehaha county for all further proceeding in the administration of said estate, including the appointment of a general administrator therefor." This judgment was entered November 18, 1908, and no stay order was obtained until December 23, 1908, which stay was continued in force by various orders until July 6, 1909, at which time it was further ordered that all proceedings be stayed until the final determination of a motion for a new trial, or until the further order of the court in the premises. The contention of the learned Attorney General is that by the effect of the foregoing direction and judgment the files in the cause became remitted to the probate court of Minnehaha county; that the judgment was executed; and that thereby the circuit court lost jurisdiction of the entire record and of the action, and the stay

orders granted thereafter were inoperative because the action was no longer pending in the circuit court. This motion was resisted by appellant on the ground, among other things, that the Attorney General was without power or authority to enter the motion, and for the reason, particularly, that the proceedings had in the circuit court, under which the state's attorney of Minnehaha county and the Attorney General were permitted to participate in the trial of the action in that court, were without authority of law. Proper and sufficient objectior.s were presented by appellant to the rulings at the trial, exceptions entered, and the questions are before us upon proper assignments of error.

The questions raised in opposition to this motion are identical in effect with those presented on the appeal, and because of the conclusions arrived at we deem it unnecessary to consider the motion further. The record before us does not clearly disclose the particular grounds upon which the trial court permitted the state's attorney and the Attorney General to appear in the proceeding then pending, and to participate in the trial involving appellant's preference right to be appointed administrator as a son of the deceased. It is clear, however, that such order must have been based upon one of three grounds, namely: The Attorney General and state's attorney must have come into the pending trial either by way of intervention under the statute; or under the provisions of the Probate Code permitting contest by proper persons; or as amicus curiæ. The Attorney General in his brief apparently bases the right to appear at the trial upon the claim that the state is in some manner interested in the result of the proceeding in which appellant is claiming the right to be appointed administrator of the estate of the deceased, John McClellan. He also calls the attention of the court to certain directions of this court upon a former appeal, as to service upon him of notice of proceedings in the circuit court in said cause, and to section 98 of the Political Code, which provides, in part, that: "The Attorney General shall attend to all civil cases remanded by the Supreme Court to the circuit court in which the state shall be a party or interested." The learned Attorney General has sought with great zeal and ability to perform

his duties in this behalf, and, whatever may be the conclusion reached in this case as to his legal right to appear and contest appellant's petition, the motives and conduct of this high officer must be conceded to be beyond criticism. The questions presented, however, are of strict legal right, and, unless the right can be maintained under the law, it must be denied.

No rule is better settled or more essential to the rights of parties litigant than that every person is entitled to access to courts of justice without interference from persons who have no interest in the matters in litigation. The question has arisen most frequently under statutes allowing intervention by third persons in pending actions. The statute of this state provides: "Any person may before the trial, intervene in an action or proceeding who has an interest in the matter in litigation, in the success of either party, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court, and served upon the parties to the action or proceedings who have not appeared, and upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint." Code Civ. Proc. § 96. This section of the Code was enacted in territorial days, and remains unchanged. It was first construed in Gale v. Frazier, 4 Dak. 196, 30 N. W. 138, and the case appealed to the United States Supreme Court, where it is reported under the title, Smith v. Gale, 144 U. S. 509, 12 Sup. Ct. 674, 36 L. Ed. 521. Justice Field adopted the construction placed upon a similar section of the California Code, in Horn v. Volcano Water Co., 13 Cal. 62, 73 Am. Dec. 569, in which that court says: "The interest mentioned in the statute which entitles a person to intervene in a suit between other parties must be in the matter of litigation, and of such a direct and immediate character that the intervener will

either gain or lose by the direct legal operation and effect of the judgment"—citing, also, Lewis v. Harwood, 28 Minn. 428, 10 N. W. 586. See, also, Dickson v. Dows, 11 N. D. 407, 92 N. W. 798; Lombard Investment Co. v. Seaboard Mfg. Co. (C. C.) 74 Fed. 325; Dennis v. Spencer, 51 Minn. 259, 53 N. W. 631, 38 Am. St. Rep. 499; Marsh v. Green, 79 Ill. 385; Wightman v. Evanston Yaryan Co., 217 Ill. 371, 75 N. E. 502, 108 Am. St. Rep. 258; 3 Am. & Eng. Ann. Cas. 1089; Clapp v. Phelps, 19 La. Ann. 461, 92 Am. Dec. 545.

.      In Wightman v. Evanston Yaryan Co., supra, the court said: "The reason for thus qualifying the right to intervene rests upon the principle that parties to a suit have the right to proceed with it to final judgment or decree free from interference by others." In Yetzer v. Young, 3 S. D. 263, 52 N. W. 1054, in discussing the right of intervention, this court said: "Appellant contends that as a simple judgment creditor she had such 'an interest in the matter in litigation' as entitled her to intervene; the argument being that the object of plaintiff's action was to get possession of the goods, to appropriate them to the payment of their alleged mortgage, and thus reduce and divert the fund out of which she might otherwise collect her judgment, and that she was directly interested in preventing this. The subject-matter of the litigation was plaintiff's right to take the goods under their mortgage. It went only to the possession. In this question appellant could not be concerned, unless she had some interest in the goods that might be affected by such change of possession." This case is cited and followed in McClurg et al. v. St. Bindery Co. et al., 3 S. D. 362, 53 N. W. 428, 44 Am. St. Rep. 799. In Lombard Investment Co. v. Seaboard Mfg. Co., supra, the court says: "The general rule is that a person not a party to a suit cannot appear in it and be admitted to defend against it except on the ground that he has an interest in the results of the litigation of a direct and immediate character." In Wightman v. Evanston Yaryan Co., supra, the court says: "If we turn to the decisions rendered by the various courts in those jurisdictions in which statutes are in force authorizing intervention, we find that they hold, without exception, that the interest

which will entitle a party to intervene must be an interest in the matter about which the litigation is to be, and of such direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment; that is, the interest must be one created by a claim to the demand of property in suit, or some part thereof, or a lien upon the property or some part thereof, which is the subject-matter of litigation."

In view of the interpretation placed upon these statutes by an unbroken line of judicial decisions, two questions present themselves for consideration : First, what is the real matter in litigation upon a contest of petitioner's preference right to letters of administration? Second, has the state any such interest in the matter, of such direct and immediate character, that it will either gain or lose by the direct legal operation and effect of any judgment which may be entered? It must be borne in mind that the state was not claiming or demanding the right to administer upon the estate of John McClellan, but sought only to oppose the appointment of appellant as administrator. Nor is the opposition to appellant''s appointment founded upon any allegation of incompetency, as that term is used in the statute. The courts have no power to declare a person "incompetent" to act as an administrator unless he falls within one of the classes named as incompetent in the statute. Estate of Bauquier, 88 Cal. 302, 26 Pac. 178, 532; Holladay v. Holladay, 16 Or. 147, 19 Pac. 81. Probate Code, § 84, declares : "No person is competent to serve as administrator or administratrix who, when appointed is: (1) Under the age of majority. (2) Convicted of an infamous crime. (3) Adjudged by the court. incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity.". No allegation of incompetency is made in this case, and therefore appellant's competency is not in issue. No issue was raised or contested upon the trial below save the question of the right of appellant to letters of administration as a son of the deceased. Section 89, Probate Code, provides: "Any person interested may contest the petition by filing written opposition thereto on the ground of the incompetency of the applicant, or may assert

his own rights to the administration and pray that letters be issued to himself. In the latter case the contestant must file a petition and give the notice required for an original petition and the court must hear the two petitions together." Under this statute "any person interested" may resist the petition for appointment in the manner and to the extent provided by the statute, and not otherwise. Where incompetency is not alleged, the statute declares that any person who seeks to contest such petition must do so by asserting his own right to the administration and praying that letters be issued to himself, and must file a petition and give the notice required by the statute. The state has neither alleged the incompetency of appellant, nor has it attempted to comply with the terms of the statute by asserting a right to administration. It is unnecessary therefore for us to consider the question whether the state, as an "interested party," through its officers or otherwise, might assert a right to administer upon the estate under a claim to the property as an escheat; but we here note that no statute authorizes a public administrator or other representative of the state to act as administrator even in the absence of claimants to the estate. The transfer of the proceeding from the probate to the circuit court by appeal in no manner changed the status of parties, nor did it in any respect enlarge or change the jurisdiction of the circuit court, or confer any new right or ground of contest or intervention. The right or authority of persons in the circuit court is only such as would have existed had the proceeding been pending in the probate court. The decisions under statutes of intervention, hereinbefore cited, have no application to the questions under consideration, save as they may serve to aid in defining the "interest" of one who may claim the right to contest a petition for letters of administration.

The authority of the Legislature to prescribe the conditions under which and to designate the persons who may contest a petition for letters of administration cannot be doubted. This the Legislature has done by the provisions of the Probate Code above referred to, and the statutes cannot be ignored by the courts. The state has not brought itself within the provisions of the Probate

Code entitling it to appear and contest the preference right of petitioner to appointment as administrator, and it is not necessary to decide whether the state has such an interest in an estate, when the right to escheat is claimed, as might bring it within the rule permitting intervention in civil actions. In the proceedings before the trial court, the right of the state to claim the property as an escheat was not involved. The question whether and in what cases an action is necessary to establish the right of the state has given rise to conflicting views and decisions in the courts of different states. In many of the decisions the courts have attempted, in effect, to substitute the state for the feudal lord or the crown, and to found the rights of the state upon reasoning analogous to the rule of the feudal law. But, under the feudal law, the paramount title remained always in the feudal lord or the crown, and a grant of the fee vested only a tenure, subject to be terminated by the failure of blood capable of inheriting, or the doing of an act which in law worked a forfeiture of the tenure. In either of these events the estate reverted to the original feudal lord or his descendants, or to the crown. It followed at common law that when a forfeiture was to be declared, or when it was sought to reduce the estate to possession, an inquisition or an inquest of office must be had to determine outstanding rights under the tenure. This proceeding was not for the purpose of vesting the title in the feudal lord or crown, but only for the purpose of declaring a forfeiture or reducing the property to possession. Its purpose was to make matter of record the termination of the rights of those who might claim through the holder of the estate. No such system prevails in this country, and the doctrine and procedure of the common law are of little aid in dealing with the question of title or interest of the state, under escheat statutes founded upon conditions so radically divergent from those of the feudal law.

In Estate of Miner, 143 Cal. 194, 76 Pac. 968, in construing a statute identical with our own, the court says: "The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate subject to the control of the probate court and to the possession of any administrator appointed

by that court for the purpose of administration. Civ. Code, §
1384. Then in section 1386 the different parties are enumerated
who are entitled to come in by succession, and the order in which
they succeed. The state, however, does not come by way of suc-
cession, but in the event of the absence of all who are entitled to
come in by succession, whether the property be real or personal,
it goes to the state by escheat. * * * Under this rule, and con-
sidering the various provisions of the several Codes bearing upon
the subject, it seems very clear that, in every case of a failure of
succession for want of heirs or kindred of the decedent, an action
of escheat becomes necessary to vest the title in the state, whether
the estate so escheated consists of real or personal property, and
this is the view heretofore expressed by this court in People v.
Roach, 76 Cal. 294 [18 Pac. 407]."

In State v. O'Day, 41 Or. 495, 69 Pac. 542, in an escheat
action under a statute substantially like our own as amended by
chapter 104, p. 177, Laws 1909, that court says: "It is only the
residue of the personal property of one dying without heirs after
the payment of the debts of the deceased and the charges and ex-
penses of administration that escheats to the state (2 Hill's Ann.
Laws 1892, § 3099), and such residue can only be determined
after an administration in the county court. * * * By the stat-
ute the county court is given exclusive jurisdiction in the first
instance over the administration of the estates of deceased persons
and the distribution of the personal property thereof, and we think
it immaterial to consider whether the Legislature can constitution-
ally deprive it of such jurisdiction. * * * But the act referred
to does not in any way interfere with its jurisdiction in transacting
probate business to proceed to the final settlement of an estate and
the adjudication of such questions as necessarily arise therein. De-
termining whether property has escheated to the state and deciding
the questions involved in such a proceeding constitute no part of
the ordinary duties of a probate court, and the act of 1887 was
simply designed to transfer the general right to adjudicate upon
such matters to the circuit court. It was intended to provide a
method of procedure by which it may be judicially determined that

the property of an intestate dying without heirs has escheated to the state. But any proceeding commenced for that purpose must necessarily be in subordination to the rules of law essential to the orderly administration of justice." The case holds that when administration of the estate has been had, and after payment of the debts of deceased and the charges and expenses of administration, and the residue of the estate has been ascertained and is ready for distribution, the state may appear and contest its right to an escheat upon the hearing of the order for final distribution.

It may well be doubted, however, whether the right of the state to claim property as escheat would be in any manner affected even by a decree of final distribution in the probate court, under the provisions of section 308 of the Probate Code. That section, after reciting what provisions the final decree shall contain, further says: "Such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside or modified on appeal." Under this statute the decree can be given only such force and effect as is defined and limited by its express terms. In plain language, only those who may succeed to the property as heirs, legatees, or devisees are concluded in their rights by the decree of final distribution. It was suggested by respondent, however, that though the state be without right to intervene in the proceeding, and may not have brought itself within the provisions of the Probate Code permitting one to contest the petition who is interested, yet the Attorney General, the state's attorney, or other person, may properly appear as amicus curiæ and take part in the contest of petitioner's preference right to letters of administration. This contention appears to us to be based upon a misapprehension of the function of an amicus curiæ. In Taft v. Transportation Co., 56 N. H. 414, Chief Justice Cushing says: "It is not ordinarily the function of the amicus curiæ to take upon himself the management of a cause. When counsel undertook to move that the action should be dismissed as against certain of the defendants, he assumed to act as counsel on behalf of those defendants. He was not reminding the court of something which had escaped its notice, but he was seeking to put in motion its power." In Birmingham

Loan & Auction Co. v. First National Bank, 100 Ala. 249, 13 South. 945, 46 Am. St. Rep. 45, the first syllabus says: "An amicus curiæ is heard only by the leave and for the assistance of the court upon a case already before it. He has no control over the suit and no right to institute proceedings therein or to bring the case from one court to another by appeal or writ of error." In Martin v. Tapley, 119 Mass. 116, Chief Justice Gray says: "But the difficulty in this case lies deeper. None but a party to a suit has a right to allege exceptions or to file a petition to establish the truth thereof. * * * An amicus curiæ is heard only by the leave and for the assistance of the court and upon a case already before it. He has no control over the suit and no right to institute any proceeding therein or to bring the case from one court to another or from a single judge to the full court by exceptions, appeal, or writ of error."

Upon all the authorities, it seems clear that an amicus curiæ cannot assume the function of a party in an action or proceeding pending before the court. In the case at bar, the Attorney General and the state's attorney assumed and exercised the functions and authority of a person who is permitted by the provisions of the Probate Code to resist an application for letters of administration. This clearly appears from the record before us, which discloses a great mass of evidence, both oral and documentary, which was offered in resistance to appellant's claim to letters of administration, and which evidence must have been the sole ground of the decision of the trial court refusing letters to appellant. Respondent's contention that such action was necessary to protect the interest of the state in property which might become an escheat is without merit. The action of the trial court in granting or refusing letters of administration to the petitioner, James S. McClellan, could in no possible manner affect the rights or interests of the state. The whole administration of the estate was under the immediate and exclusive control of the probate court. The administrator, an officer of the court required by law to enter into an undertaking for the faithful performance of his trust, could only act under the direct control and supervision of that court.

And, even though it be assumed that at the conclusion of such administration the state would be entitled to the "residue of the estate" as an escheat, yet we are unable to see in what manner the interests of the state may be imperiled by the granting of letters of administration to appellant. The possibility of such injury could only lie in a criminal misappropriation of the estate by the administrator, and this could only be accomplished by neglect or collusion on the part of the probate court itself. We cannot assume the possibility of any such conditions. We are bound to presume that the probate court and the administrator will faithfully and honestly perform their respective duties. And, even were we to assume that through negligence or criminal act the estate might be wasted, the state in this proceeding was not claiming the right to select an administrator, nor was it alleging the incompetency of appellant to act in that capacity. We are constrained to believe that neither the state nor any of its officers had any right or authority to appear and contest the petition of appellant for letters of administration. We hold, therefore, that the state did not and could not become in any manner a party to or bound by the proceeding pending before the trial court.

The court therefore erred in overruling appellant's objections to the appearance of the state or its officers and in permitting them to contest appellant's petition.

The cause is reversed and remanded to the trial court for further proceedings in accordance with these views.

WHITING, J., took no part in this decision.