In re the ESTATE OF JOHN McCLELLAN, Deceased.

(141 N. W. 965.)

1.    Appeal—Administration of Estate—State's Right to Estate—
      Right to Object to Appointment of Administrator—Prohibition
      of State to Appear—Res Judicata.
      A decision of the Supreme Court in a proceeding for appointment of an administrator that the state, claiming that decedent's estate had escheated, could not contest petitioner's right to appointment because only parties authorized by statute

to and who did apply for letters of administration could make such contest, the state not being authorized, and because the administration proceedings would not affect the state's right to an escheat, was not conclusive against the state's right, on a subsequent appeal from the county court to the circuit court, in a proceeding for final distribution of the estate, to contest the right of those claiming the estate.

2. **Escheat—Enforcement of Escheat—Interest of State—Appearance on Distribution of Estate—Character of State's Right.**

Under Prob. Code, Sec. 307, providing for distribution of an estate upon final settlement in administration among those entitled thereto, and section 310, requiring on the hearing for distribution such notice by posting or publication as the court may direct, the purpose of which is to afford to all persons having or claiming an interest an opportunity to appear and assert their claims, and Civ. Code, Sec. 1111, providing that if there is no one capable of succeeding to a decedent's estate and title fails from defect of heirs the property devolves and escheats to the state, and that an action for recovery thereof and to reduce it to state's possession, or for its sale and conveyance, may be brought by state's attorney, **held,** the state has such an interest in an estate claimed to have escheated as entitles it to appear in the proceeding for distribution and contest the right of those claiming to be heirs, without first bringing an action of escheat, since the title vests in the state instantly upon a decedent's death without heirs, and is not created or vested by the judgment which merely evidences the facts upon which the state's title rests, and such right is not a contingent interest, but the state's right depends simply upon the existence or non-existence of heirs.

3. **Executors and Administrators—Right to Administer Estate—Right to Inherit—State's Right to Escheat—Res Judicata.**

The appointment of an administrator upon a petition alleging that petitioner was a son and heir of decedent, is not res judicata as to his heirship, as against the state claiming an escheat, and which had no legal right to appear and contest such appointment.

4. **Executors and Administrators—Final Distribution—State's Right as Escheatee to Contest Heirships—Jurisdiction of Probate Court.**

Conceding, without deciding, that Ch. 104, Laws 1909, concerning escheats to the state is unconstitutional because seeking to vest jurisdiction in matters of probate upon the circuit court, and that the probate court has no jurisdiction over escheats, yet the state, being an interested party as claimant of an escheat of the estate under administration, may appear in the

probate court and contest the alleged rights of other claimants to escheated property.

5.  **Executors and Administrators—Decree of Distribution—Conclusiveness of Decree Against State Claiming Escheat—Jurisdiction in Escheat.**

Where the state, claiming an escheat of decedent's estate, appears in proceedings for final distribution and contests rights of claimants of the estate as heirs, a decision of county court in favor of such other claimants is final and decisive of state's right to an escheat, until reversed; and such right of the state to so appear is distinct from and independent of the right or jurisdiction of county court to try an action of escheat.

(Opinion filed May 24, 1913.  Rehearing denied June 24, 1913.)

Original petition in the Supreme Court, by James S. McClellan and others for a writ of prohibition restraining the Circuit Court of Minnehaha County from permitting the State to appear in a proceeding therein pending upon appeal from the County Court, for the final distribution of the estate of John McClellan, deceased.  Writ denied.

See also, 27 S. D. 109, 129 N. W. 1037.

*Grigsby & Grigsby,* and *C. O. Bailey,* for Petitioners.

The state of South Dakota has no right to appear and contest the question of heirship, on the final settlement and distribution of the estate of John McClellan, deceased.

First: Because the appointment of the administrator on the petition of James S. McClellan, he claiming to be a son and heir, is res adjudicata on the question of heirship and cannot be attacked in a collateral proceeding.

Second: Because under the statutes of South Dakota only persons interested in the estate have a right to appear and be heard on final distribution and the state of South Dakota is not an interested party.  Caujolle v. Ferrie (Caujolle v. Curtiss), 13 Wall 465; 20 L. Ed., 507; Howell v. Budd, 91 Cal. 342; 27 Pac. 747; Woerner, Am. Law of Administration, 2d Ed. p. 1234; Byers v. McAuley, 149 U. S. 608; 37 L. Ed., 867; 13 Sup. Ct. Rep. 906; Farrell v. O'Brien (O'Callighan v. O'Brien), 199 U. S., 89, 50 L. Ed., 101; 25 Sup. Ct. Rep. 727; State v. McGlynn, 20 Cal. 233; 81 Am. Dec. 118; John Kieley et al, v. McGlynn, 88 U. S. 503-520; 22d L. Ed. 599.

Under section 89 .of the Probate Code, any party interested can contest an application for the appointment of an administrator.

If, under that section, the state could not appear as an interested party it certainly cannot appear as an interested party in any subesequent proceeding, unless authorized by some other provision of the statute. In re McClellan's Estate, (S. D.) 129 N. W. 1037.

Our statutes do not authorize the state to appear on the final settlement and distribution of an estate. It is not an interested party. Secs. 285, 286, 303, 304, 310, Probate Code.

If Chapter 104, section 5, Laws 1909, is constitutional, then the state may have question of heirship determined in circuit court, if an escheat action were begun by the state. But such a law is unconstitutional. State v. McDonald, (Ore.) 104 Pac. 967; Section 20 of Article 5, Constitution; 11 Cyc. 982; Scott v. Roystone, 223 Mo. 568; 123 S. W. 454.

## IN REPLY.

An action of escheat is premature if brought during the pendency of probate proceedings by persons claiming to be heirs. State v. Black's Estate, (Court of Civil Appeals of Texas) 51 S. W., 555; Hopf v. State, (Tex.) 10 S. W. 589; In re Sanborn, 98 Cal., 103; In re Hickman, 101 Cal. 609; Naile v. Olmstead, 4th Weekly Notes, Cases 558, Pa.; Wallahan v. Ingersoll, 117 Ill. 124; 7 N. E. 519.

Under the common law the state had no title until after judgment under such proceedings. Fairfax v. Hunter, 7 Cranch 604; 3 L. Ed., 453; later the U. S. Supreme Court in Hamilton v. Brown, 161 U. S. 255; 40 L. Ed. 691.

Escheats in this state are provided for by Section 1111, Civil Code 1903.

That section clearly indicates that the title to the property does not vest in the state so that the state can exercise any control over it or make a sale of it, or in any way treat it as the property of the state until the action provided by the statute is brought.

The state could not appear at the time of distribution claiming by escheat, because the probate court has no jurisdiction in matters of escheat. Garwood v. Garwood, 29 Cal. 519; State v.

.O'Day, 41 Ore. 495; 69 Pac. 542; Byers v. McAuley, 149 U. S. 608; 13 Sup. Ct. 906; 37 L. Ed. 867.

Although the circuit court has jurisdiction in matters of escheat such jurisdiction cannot be entertained on an appeal from a court having no such jurisdiction. In re Skelly's Estate, 21 S. D. 464; 113 N. W. 91; In re Olson, 17 S. D. 1; 94 N. W. 421; Union Pacific Ry. Co. v. Ogilvy, (Neb.) 26 N. W. 464; Brondberg v. Babbott, 14 Neb. 517; S. C. 16 N. W. 845; Cooban v. Bryant, 36 Wis. 605.

This escheat statute recites certain conditions, which must precede the commencement of an action of escheat.

These conditions precedent absolutely negative the authority of the attorney general, or of the state's attorney, to commence any such action until after an investigation from which it shall be ascertained that the title of property has failed through defect of heirs.

*Royal C. Johnson,* Attorney General, *Martin Bergh,* States Attorney, (*U. S. G. Cherry* and *Herbert Abbott,* Special Counsel), for Respondents.

Upon the death of an intestate without heirs, that is to say, without leaving anyone capable of succeeding to the estate, such residue thereof instantly devolves and escheats to the state, for the benefit of the school fund thereof. The court having jurisdiction for purposes of probate, in like manner acquires the right to control of the estate for the purposes of administration. And in like manner, the administrator acquires the right to possession for the purposes of such administration. C. C., Secs. 1093, 1111; Secs. 1094, Sub. 9; Sess. L. 1909, Chap. 104, Secs. 1 and 8; Wallahan v. Ingersoll, 117 Ill. 123; 16 Cyc. 552; Reid v. State, 74 Ind. 252.

But no provision is made in this state, for a public administrator, escheator, or other person, to administer the estate or to appear and contest the right to administer the estate in behalf of the state. P. C., Sec. 80; In re, McClellan Estate, 27 S. D. 109; 129 N. W. 1037.

In some states where the right is given to such escheator, etc. to appear and contest the preference right to administer as against those claiming to be heirs, creditors or beneficiaries under the asserted existence of a will, or otherwise, the entire question of the

state's rights in the estate may be, and frequently is, litigated in the contest on the preference right to administrator. 1 Ross Pro. L. & Pr., Secs. 226-233; Indiana, Secs. 1157, 2633, Ann. Stat. (1894).; Illinois: Chap. 49 Rev. Stat. (Hurd 1885); California: Secs. 474, 1269-72, Pol. Code, Vol. 1 Deering's Code; Oregon: Secs. 3135-41, Hill's Ann. Laws, Laws 1903, p. 127, Amending Act of 1887; 16 Cyc., 549, foot note 4.

Neither the heirs, creditors, or other persons competent to administer, nor the state claiming the right to the property as an escheat, are required to contest the issue of title or interest in the estate, in that portion or stage of the probate proceeding wherein an administrator is chosen. They may await the close of the administration of the estate and the ascertainment of the residue, if any, remaining after payment of expenses of administration and the claims of creditors, and then assert their claim or interest in such residue as may have been ascertained. P. C., Secs. 39, 86, 89, 92, 95, 96, 97, 283, 284, 287, 302, 303, 307, 308, 340.

Neither by sections 39, 86, 89, nor any other provision of the Probate Code, or the statute law of the state, nor by any general rule of law, is it provided that failure to appear and assert the preference right shall be deemed a waiver of anything except the mere right to administer. There is no provision of statute or rule of law that such failure shall have any effect whatever upon the destination of the estate on distribution. But when the estate has been administered, the residue thereof ascertained, and the estate is ready for distribution a very different line of statutory enactment and settled principles of law apply. Under Secs. 283 and 284 the issuance and requisites of notice for the settlement of an account, or if the settlement be a final one, then for final distribution, are prescribed, and by Sec. 287 it is provided that "The settlement of the account and the allowance thereof by the court, or upon an appeal, is conclusive against all persons in any way interested in the estate." etc.

By section 302 provision is made whereby "any heir, devisee or legatee" may, before final settlement and distribution, present his petition to the court for any legacy or share to which he is entitled; and by Sec. 303 provision is made for the giving of notice "to all persons interested in the estate" in such case; and by Sec.

307 provision is made whereby upon final settlement either the "executor, administrator, or any heir, legatee or devisee" may initiate proceedings for final distribution, and after the giving of the notice and upon the hearing the court enters its decree; and by Sec. 308 it is provided, "In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled, and such persons may demand, sue for and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside or modified on appeal." And by section 340 provision is made for the trial of an issue of fact in case one is joined, and the parties are required to be arranged as plaintiffs and defendants, and provision is made for findings of fact, conclusions of law and judgment.

But it is only where the point in issue has been determined, that the judgment is a bar. Greenleaf on Ev. Sec. 529.

Even if it be assumed that there is no statute authorizing or requiring the state or its officers to appear at the time of final distribution in the Probate Court, the general terms of the Probate Code are clearly applicable.

Immediately upon the death of an owner of property, it is impressed with a trust in favor of his creditors, heirs, legatees, or in case of his death intestate and without heirs, then in favor of the state, to which the property has thereby devolved and escheated. Probate courts, or others having the power and jurisdiction to administer upon the estate, constitute merely the machinery through which the trust thus impressed is executed. Whoever has become entitled to the property by the fact of death is an interested party, or a party in interest. But in this state, the state, as a claimant to the property as an escheat, is by statue specifically given the right to appear and assert its interests and protect its claims in any court or proceeding. P. C., Secs. 284, 290, 302, 303, 304, 308; I. Story's Equity Jurisprudence, Sec. 532; Byers v. McAuley, 149 U. S. 708; 37 L. Ed. 867; Kendall v. Creighton, 64 U. S. 90; 16 L. Ed. 419; Borer v. Chapman, 119 U. S. 587; 30 L. Ed. 532; McClellan v. Carland, 187 Fed. 915; In re Peterson Estate, (N.

D.) 134 N. W. 751; In re Sullivan's Estate, 94 Pac. (Wash.) 483; 78 Pac. 945.

It is true that the Probate Code, in designating the persons upon whom the decree of final distribution shall become binding and conclusive, limits the same to the "heirs, legatees, or devisees." It does not here use the words, "persons interested," or other like words. There are very wise reasons for permitting all persons interested to come in and be heard on the settlement of the final account and upon the final distribution. And all who thus do come in will, under the rules hereinbefore considered, be bound independent of any provision of statute. But if for any reason they do not come in, the decree of final distribution is made conclusive only as against heirs, legatees or devisees. The clear purpose of this legislation is to save to the state its right to the property as an escheat, if even after the entry of the decree of final distribution it should be ascertained that the decedent died intestate and without heirs. Story's Equity Jurisprudence, supra, and other authorities last above cited.

But under positive statute in this state, the state may appear in any action in any court or in any proceeding necessary to either recover the possession of property which has become an escheat, or to enforce or protect the rights of the state thereto, or in any manner on account thereof. And it may well be considered whether the state, in view of the provision of this statute, construed in connection with Sec. 308 of the Probate Code, would not become bound and concluded if it failed to appear and assert its rights and interests at the time of such final distribution. Sec. 1, Chap. 104, Ses. L. 1909; In re Sullivan's Estate, 78 Pac. 945; State v. O'Day, 41 Ore. 495; 69 Pac. 542; State v. McDonald, (Or.) 104 Pac. 967; State v. District Court, 25 Mont. 355; 65 Pac. 120; Reid v. State, 74 Ind. 252.

In the case at bar the estate consists largely of personal property, there being an item of some $27,000 in the form of cash in the hands of the administrator, and there being other items of stock in banks and other like instantly convertible items. The various members of the Arkansas family of claimants are non-residents of the state, absent therefrom, and insolvent. Under these circumstances the state is entitled to maintain any action, suit, or

proceeding necessary for the enforcement or protection of its rights in the matter of escheated property in like manner and with like effect as any natural person, and can appear in the county court and present for adjudication the question whether McClellan died without heirs.    State v. O'Day, supra.

The powers conferred upon either the circuit or the county court, or both, are derived from the Constitution.    That instrument confers original jurisdiction in all matters of probate, upon the county court.    But, it also confers original jurisdiction upon the circuit court in all actions and causes both at law and in equity. It is quite possible, indeed it frequently occurs, that both these courts possess jurisdiction in probate matters.    Neither of these courts has been given exclusive original jurisdiction in probate matters by the Constitution.    The circuit court has supervisory control over the county court, and by statute, pursuant to the constitution has been also given appellate jurisdiction therefrom.    In consequence of the concurrent original jurisdiction above mentioned, the supervisory control, and the appellate jurisdiction conferred upon the circuit court, it seems clear that the escheat act of 1909 is, not in conflict with the constitutional provisions defining the jurisdiction of the two courts in question.    Constitution, Art. V. ss. 1, 14, 20; C. C. ss. 1111, 1094, sub. 9; Pro. Code, s. 2; Session Laws 1909, Chap. 104, ss. 1, 2, 5; Vine v. Jones, 13 S. D. 54, 60; Pro. Code, ss. 19, 20, 21, 28, 29; Trotter v. Mut. Reserve, 9 S. D. 596; Chap. 81, Session Laws 1905, s. 4; State v. McDonald, (Or.) 104 Pac. 967; State v. O'Day, 41 Ore. 495, 69 Pac. 542.

Assuming that the county court and the circuit court have, under our constitution and statutes, concurrent jurisdiction, it would clearly appear that in the case at bar the county court had the right to proceed to the very point to which it did proceed, to-wit, the adjudication as to who, if any, of the persons before it, claiming to be heirs and entitled to the estate by succession, were in fact such heirs and clothed with such succession.    Upon the evidence, it found as a fact that there was a defect of heirs.    A suit under the escheat statute, either to recover possession, or to adjudicate the fact that an escheat had occurred, or, to place of record an adjudication which would start the statute of limitations contained in section 10 of the Escheat Act, to running, or to ex-

ercise any of the other powers provided by the act, would seem to be a perfectly proper procedure, and such a suit was pending at the time of the hearing on the petition for final distribution in the county court. Assuming that under our Constitution and statutes, the jurisdiction was concurrent, the circuit court would in like manner have the power to adjudicate whether or not the Arkansas claimants or any other claimants were heirs, or whether or not there was a defect of heirs, resulting in an escheat.

It is apparent that there are questions arising in connection with the adjudication of an escheat and the passing of the escheated estate to the proper state officers, to which the county courts as courts of probate are not adapted.

The Escheat Act of 1909, does not oust the county court of the original jurisdiction conferred upon it by the Constitution "in all matters of probate", and therefore in the matter of adjudicating who, if anyone, are the heirs, or whether there is a defect of heirs. Waterman v. Canal, 215 U. S. 33, 54 L. Ed. 80; Byers v. McCauley, 149 U. S. 608, 37 L. Ed. 867; Farell v. O'Brien, 199 U. S. 89, 50 L. Ed. 101.

Even if the escheat act of 1909 is void in its entirety, the action in the circuit court not only could, but should be maintained. If the escheat act were swept away, the provisions carried down in our Civil Code since prior to statehood, would still stand. (C. C. s. 1111.)

SMITH, J. James S. McClellan and others, claiming to be heirs at law of John McClellan, deceased, have filed in this court a verified petition alleging that John McClellan died intestate in Minnehaha county on or about August 3, 1899; that on the 6th day of November, 1911, upon the petition of said James S. McClellan, claiming to be the son and heir at law of decedent, letters of administration were issued to one George T. Blackman; that on the 9th day of February, 1912, said administrator filed his final account of administration, together with a petition for final distribution of the estate; that, at the hearing upon the petition for final settlement and distribution, the county court of Minnehaha county permitted and allowed the state of South Dakota to appear, through the Attorney General, and take part in said hearing, over the objections of petitioners, and permitted the state to oppose the petition for distribution to these petitioners as heirs of the de-

ceased, and on May 4th, 1912, entered a decree that petitioners were not heirs at law or next of kin of deceased; that petitioners have perfected an appeal from said decree of the county court to the circuit court of Minnehaha county, which appeal is now pending and on the calendar of said circuit court for trial; that said circuit court, over the objections of petitioners, has made and filed an order permitting and allowing the state of South Dakota to appear upon the trial of said appeal, and to contest and offer evidence in opposition to the claims of petitioners as heirs at law of decedent, and to participate therein as a party. The alternative writ recites and alleges that the state of South Dakota has not and never has had any interest in the estate of John McClellan, deceased. Petitioners pray a writ of prohibition restraining said court from allowing the state to participate in any manner in the proceedings on appeal. In the petition for the writ is given an extended history of preceding litigation which gave rise to the present proceeding. The facts recited are somewhat voluminous and complicated, but, if deemed material to a proper understanding of this decision, a full statement of facts may be found in the decision of this court reported in 27 S. D. 109, 129 N. W. 1037.

[1] Upon the return day of this writ, the state of South Dakota, by Royal C. Johnson, Attorney General, and other counsel representing the state, filed an answer, the particular allegations of which need not be referred to further than to state that they are sufficient to present the questions we are called upon to decide in this proceeding. Briefly stated, the petition and answer disclose that the present petitioner, James S. McClellan, at one time filed in the county court of Minnehaha county a petition for letters of administration, founding his right thereto upon an allegation that he is a son and heir of John McClellan, deceased; that thereafter such proceedings were had in the county and circuit courts of Minnehaha county that the state of South Dakota, through its Attorney General, was permitted to appear and contest the allegation that James S. McClellan is a son of the decedent; and a decree was finally entered in the circuit court adjudging that James S. McClellan was not a son of John McClellan. At all stages of the proceedings leading up to this final judgment, the petitioner, James S. McClellan objected to the appearance of the state, and

denied its right to participate therein, on the ground that it was not a party interested in the estate.

An appeal was taken from the final judgment of the circuit court, to this court, upon whicih appeal the only question determined was as to the rigiht of the state to appear and contest the application for *appointment of an administrator* upon the petition of James S. McClellan, wherein he claimed such right as son of the decedent. In re McClellan's Estate, 27 S. D. 109, 129 N. W. 1037. The contention of the state is, and at all times has been that John McClellan died intestate without heirs, and that his property escheated to the state. Upon that appeal it was held: That the Legislature had authority to confer the exclusive right to become petitioners for letters of administration, upon certain classes of persons named in the statute, and to prescribe the order of precedence in which such right might be exercised by persons of the different classes, that, upon a petition filed by a person included within one of the classes named in the statute, the only persons "interested" in the matter of the appointment of an administrator are those belonging to one of the classes named in the statute, who are themselves entitled to and do make application for letters of administration; that the state is not designated as belonging to any one of the classes entitled to petition for letters, and in fact, had not attempted to claim such right, and therefore had no interest in the appointment of an administrator, and could not contest such application; that the right of the state to an escheat was not involved in that proceeding, for the reason that such right could not in any manner be affected by the usual and ordinary proceedings in administration, which involve only the conservation of the estate and payment of the just debts of the decedent; and that the right of the state to an escheat, if such right existed, was operative as to the residue of the estate remaining for distribution at the close of administration. The full effect of the decision is that the state has no interest in administration proceedings, except as might affect the final disposition of the estate. It is apparent that the ruling in that case is not decisive of the question involved in this proceeding.

[2] Section 307 of the Probate Code provides: "Upon the final settlement of the accounts of the executor or administrator * * * the court must proceed to distribute the residue of the

estate in the hands of the executor or administrator, if any, among the persons who by law are entitled thereto. * * * "

Upon the hearing of the petition for distribution, the matter to be ascertained and determined by the county court is, What persons are entitled by law to the residue of the estate? Upon the filing of the petition the law requires notice to be given by posting or publication as the court may direct, and for such time as may be ordered. Probate Code, § 310. The purpose of this notice and of the hearing upon the petition is to afford all persons having or claiming an interest in the final disposition of the residue of the estate an opportunity to appear at that time and make known their claims. The precise object of the hearing is to ascertain and determine any conflicting rights of claimants. It is apparent, therefore, that any person claiming to be an heir of the decedent or entitled to the estate or some portion thereof (unless estopped by participation in some prior proceeding in the course of administration) has such an interest in the estate as entitles him to contest the right of any other person who claims to be an heir of the decedent. Upon this hearing, the facts constituting alleged heirship may be put in issue and presented to the court for determination. But it is the contention of petitioners that the state, claiming a right by escheat, is not an "interested party" within the meaning of the Probate Code, until the right of the state has been determined in an escheat action, and is not entitled to contest the claim of an alleged heir at such hearing. We are inclined to the view that petitioners are wrong in this contention.

Our statute relating to escheat is almost exactly like that of the state of Illinois. In Wallahan v. Ingersoll, 117 Ill. 124, 7 N. E. 519, a case cited by petitioners, it was held that: "When the owner of real property dies intestate, without heirs capable of inheriting it, the title thereof devolves, by operation of law, upon the state. Yet, when thus acquired, the state cannot make its title available without first establishing it in the manner prescribed by law." Section 1111 of our Civil Code provides: "If there is no one capable of succeeding under the preceding sections, and the title fails from a defect of heirs, the property of a decedent devolves and escheats to the state; and an action for the recovery of such property, and to reduce it into the possession of the state, or for its sale and conveyance, may be brought by the state's attorney

in the circuit court of the county or judicial subdivision in which the property is situated." We think it clear, under this statute, if it be a fact that there are no heirs when the owner dies, the title to his property instantly vests in the state, but that the state is not given the right to recover the property and reduce it into possession of the state or sell and convey it, except through an action of escheat. The title which vests in the state is not created or vested by the judgment in the action. But the judgment becomes evidence of the facts upon which the state's title rests, and renders effective the right to recover and reduce the property into possession of the state.

Petitioners further contend that the interest of the state in escheated property is merely a contingent interest, dependent upon the existence or non-existence of heirs, and that a contingent interest is not such an interest in the estate as entitles the state to contest the claims of alleged heirs. The case of Halde. v. Schultz, 17 S. D. 465, 97 N. W. 369, is cited as sustaining this contention. That case is not in point here. It involved the possible or contingent right of the father to inherit property belonging to a divorced wife, which might descend to a child of the marriage upon the death of the mother, and thence to the father, upon the death of the child. It was held in effect; that the father had no present interest in the estate, and that any contingent interest of the father would not be affected by the probate proceedings, and he was therefore not a party interested. The interest of the state in escheated property is no more contingent than is the interest of an heir of a certain class, whose rights depend upon the existence or nonexistence of other heirs of a different or higher class, whose rights take precedence over those of the claimant. The right to inherit in such case, as does the right of the state to an escheat, depends upon the *existence of heirs whose rights are superior to those of the claimant,* and the right is no more contingent where it is claimed by the state as an escheat than where it is claimed by one as an heir. The only "contingency" in either case is as to what may be the decision of the court upon a question of fact, namely, the existence of heirs.

[3] Petitioners further contend that the appointment of the administrator having been made upon the petition of James S. Mc-

Clellan, alleging that he is a son and heir of John McClellan, his right as a son to inherit is res adjudicata and cannot be contested upon the hearing on the petition for distribution. Whether the right of James S. McClellan to inherit as a son of the deceased may be deemed res adjudicata as to claimants who, by the statute, are given the right to appear and contest the appointment of an administrator, and who do in fact contest, or whether his rights should be deemed res adjudicata as to those who are given the right to contest but fail to appear, it is not necessary for us to determine in this case. It is an elementary principle of law that no righ can be deemed adjudicated in any proceeding wherein the law denies a person the privilege, right, and opportunity to be heard. This court, upon the former appeal, held that the state did not have the legal right to appear and contest the appointment of an administrator, no matter to what class of persons the petitioner might belong. It follows that the heirship of James S. McClellan is not res adjudicata as against the state.

[4] Petitioners further contend that the state cannot contest the petition for distribution, claiming by escheat, because the probate court has no jurisdiction in matters of escheat. In this connection petitioners further contend that chapter 104, Laws of 1909, is unconstitutional, because section 20, art. 5, of the state Constitution, confers exclusive original jurisdiction in all matters of probate and settlement of estates of deceased persons upon the county court, and the Legislature is without power to withdraw any part of the jurisdiction vested by the Constitution in the county court and confer it upon the circuit court.

In the view we take of this case, it is unnecessary to consider or decide the question of the constitutionality of chapter 104, Laws 1909. If it be held that the state, though possessing a present vested interest in escheated property, may not contest the claims of alleged heirs, either upon the petition for appointment of an administrator or upon the petition for final distribution of the estate, and may not maintain an escheat action pending administration proceedings, it would follow that the estate is without power to resist the claims of alleged heirs, no matter how false or fraudulent, at least until after the property has been distributed to such claimants. If the claim of the state to escheated property be well founded in fact, the state is certainly an interested party,

entitled to protect its rights against wrongful or fraudulent claims of any person whomsoever. If it be conceded, which we do not decide, that the escheat law of 1909 is unconstitutional, and if it be conceded that the state may not exercise its right to reduce escheated property to possession, or to sell or dispose of it, pending administration proceedings, and the probate court may not by its decree upon distribution award escheated property to the state, certainly we think the state is an interested party, at least to an extent which permits it to appear and contest the alleged rights of other claimants to escheated property.

[5] Upon such contest, a decision of the county court in favor of claimants as heirs, would doubtless be final and decisive of the right of the state to an escheat until reversed on appeal. On the other hand, if the decision of the county court be adverse to those who claim as heirs, and that court be held to be without jurisdiction to award the property to the state as an escheat, the only effect of such decision would be to leave the property in the hands of the administrator, subject to the jurisdiction of that court. In such case the state, for the purpose of establishing its right to possession of the property remaining in the hands of the administrator, could maintain an escheat action, either under the provisions of section 1111 of the Civil Code or chapter 104 of the Laws of 1909, if held constitutional. In other words, the right of the state to appear at the hearing upon the petition for distribution, and to resist the claims of alleged heirs, is entirely distinct from and independent of the right or jurisdiction of the county court to try an action of escheat. Whether a decision of the county court adverse to those claiming as heirs, upon the hearing for final distribution, would become res adjudicata as against such claimants, should they attempt to again assert the same right against the state in an escheat action, we do not need to consider.

We have examined with much interest the able and elaborate briefs of counsel, but do not deem it necessary to further review the questions discussed or the many authorities cited. We are convinced that the circuit court was within its jurisdiction in making the order permitting the state to appear and contest the claims of petitioners at the hearing upon the petition for distribution, and that the writ of prohibition should be denied. It will be so ordered.