In the ESTATE OF Curtis C. ARM-
STRONG, Sr. a/k/a Curtis Calvin
Armstrong, Sr., Deceased.

No. 04–04–00073–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 3, 2004.

Rehearing Overruled Dec. 16, 2004.

ance and reset the case for November 10, 2003.

Norman C. Dean, Norman C. Dean, P.C., New Braunfels, for appellant.

Dennis Sagebiel, Grace G. Kunde, Seguin, for appellee.

David J. Eveld, Knobles, Raetzch, Moore & Eveld, L.L.P., Seguin, for Ad Litem.

Sitting: ALMA L. LÓPEZ, Chief Justice, SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

■ Appellant Debra Schumann Armstrong ("Schumann"), the alleged common law wife of the deceased, appeals two probate court orders, contending the trial court erred in: (1) denying her right to trial by jury; (2) ruling on a matter of fact at an *in limine* hearing; (3) ruling that she did not have standing; and (4) dismissing her plea in intervention. We hold that the probate court properly made a determination regarding Schumann's standing at the *in limine* hearing for purposes of the estate administration proceeding. Accordingly, we affirm the trial court's order on the motion in limine to determine standing. We further hold, however, that the probate court's finding with regard to whether a common law marriage existed between Schumann and the decedent was a collateral matter to the issue before the court in the estate administration proceeding; therefore, the probate court erred in denying Schumann's plea in intervention based on its earlier finding. Accordingly, the probate court's order denying Schumann's plea in intervention is reversed, and the cause is remanded to the probate court for further proceedings consistent with this opinion.

### BACKGROUND

Curtis C. Armstrong, Sr. passed away on April 9, 2003. At the time of his death, Curtis had a daughter and a son. On April 15, 2003, Curtis's daughter, Deborah Gayle Armstrong ("Armstrong"), filed an application for temporary administration, attaching a copy of a will dated November 1, 1995. On April 16, 2003, the trial court entered an order appointing Armstrong as temporary administratrix.

On April 22, 2003, Schumann filed an objection to the issuance of letters of tem-

porary administration, attaching evidence that the November 1995 will had been revoked before Curtis's death. On May 15, 2003, Armstrong filed an application for independent administration and letters of administration. In this application, Armstrong asserted that Curtis died intestate, noting that she had "since learned that the [November 1995 will] was revoked by Decedent." Armstrong mentioned Schumann's possible common law marriage claim but denied that Schumann was married to Curtis. Also on May 15, 2003, Armstrong filed an application to determine heirship.

On June 4, 2003, the probate court entered an order appointing Norman C. Dean, who had been Curtis's accountant, as successor temporary administrator. The order stated that the temporary administration needed to continue "due to a contest in this probate proceeding related to the granting of letters of administration. The primary contested issue is whether the Decedent was married at the time of his death."

On June 17, 2003, Schumann filed an original answer to the application to determine heirship, asserting that she was Curtis's common law wife and requesting the probate court to find that a marriage existed. On August 8, 2003, Armstrong filed a motion to set the application to determine heirship for a non-jury trial. On August 19, 2003, Schumann filed a jury demand.

On August 19, 2003, Dean filed an application for authority to expend funds to pay certain debts. On August 29, 2003, Schumann filed an objection to the payment of expenses, asserting that some expenses were improper and that the temporary administrator's fee request was excessive.

On September 5, 2003, Schumann filed the following: (1) motion to set the application to determine heirship for a jury trial on November 3, 2003; (2) motion to set her objection to the payment of expenses for a non-jury hearing on September 25, 2003; and (3) notice of intention to take Armstrong's deposition. On September 10, 2003, Armstrong filed a motion to limit Schumann's discovery to the common law marriage issue. On September 15, 2003, Schumann filed a motion for sanctions against Armstrong because she failed to appear at the deposition. The motion for sanctions was set for a non-jury hearing on September 25, 2003.

On September 25, 2003, the trial court commenced the hearing on Schumann's motion for sanctions and objection to payment of expenses. At the hearing, Armstrong's attorney raised the issue of Schumann's standing. Schumann's attorney responded that a jury trial was set on the issue in November; however, the probate court stated that the issue would be decided by the court at an *in limine* hearing. Schumann's attorney asserted that the trial court could make a preliminary ruling; however, Schumann was still entitled to a jury trial on the factual issue of whether a common law marriage existed.

On October 9, 2003, the trial court commenced the *in limine* hearing. On the morning of the hearing, Schumann filed an objection to the court's making a factual determination regarding whether a common law marriage existed because Schumann had timely filed a jury demand in the heirship proceeding and no motion for summary judgment had been filed. At the hearing, Schumann's attorney stated that he filed the objection to ensure that Schumann's right to a jury trial was not waived. In response to the waiver issue, the following exchange occurred:

> THE COURT: I don't believe that you are, all I have here, if counsel wants to—to review it; a couple of cases that I think make the case that, although there may be a jury issue as to the question of

heirship and those matters, that the Court can make a preliminary—and [is] supposed to make a preliminary—determination as to whether there's interested party here, since your client is objecting to things that are pending before this Court now—

MR. DEAN [Schumann's attorney]: That's right.

THE COURT: —like the payment of the administrator and certain bills.

MR. DEAN: Exactly.

THE COURT: So, if she wants to do that, I think I should hear some evidence that she has an interest in this sufficient to let her object. And, again, if counsel wants to read Sheffield versus Scott—

MR. DEAN: I probably have a copy of this case, Judge.

THE COURT: The other one here is—well I thought it was—Boone versus Le Galley—and I think they both say much the same thing; that there needs to be a motion—a hearing *in limine* concerning that issue. So that's what I will intend to do today, because, once we determine the issue of whether your client has the interest that's necessary, then I want to resolve some of these payment issues of bills and the payment of the administrator.

\* \* \* \* \* \*

[More discussion between Mr. Dean and the trial court regarding absence of waiver.]

\* \* \* \* \* \*

MR. SAGEBIEL [Armstrong's attorney]: May I comment on—

THE COURT: Yes, sir.

MR. SAGEBIEL: —that? I believe, since the case has been structured where [Schumann] Schuman has come in and put herself in a position of trying to

file in the administration of the estate without standing, she herself has put herself in the position of the Court having to make the initial determination. And I believe, if the Court makes an initial determination that she does not have standing, that there is case law there that may preclude a jury trial and that I would want that issue to be kept open for the Court to—

MR. DEAN: I've got—

MR. SAGEBIEL: —determine that.

MR. DEAN: —a couple of cases that say that—

THE COURT: Wait. One at a time. What I'm telling you, Mr. Dean, is I don't believe, by having this hearing, he is waiving that issue. As I said, if I were to find that she is not an interested party, well, we'll deal with that when we get to it—

MR. SAGEBIEL: Very good.

THE COURT: —but I don't believe that the issue is waived at all simply by having this hearing. And if I make some finding contrary to your client's interests, well, we'll see what happens then. But I don't believe this is going to be waiving anything. All right.

At the conclusion of the hearing, the trial court made the following findings:

THE COURT: All right. Thank you. All right. Having heard the evidence, the exhibits admitted into evidence, and the argument of counsel, the Court finds that the person designated at this proceeding as Petitioner Debra Schumann Armstrong has failed to prove by a preponderance of the evidence that she is the common-law wife of Curtis C. Armstrong, Sr. The Court finds no evidence in the record of any formal or informal marriage of any sort. The Court further finds no other evidence of any interest of [Debra] Schumann Armstrong, as designated in this proceeding, may

have in the estate. Therefore, the Court finds that [Debra] Schumann Armstrong is not an interested person in this estate for purposes of objecting to the payment of any expenses or claims or for objecting to the fees paid to [the] temporary administrator; and, further, she has no standing to pursue discovery in this case.

On October 10, 2003, Schumann filed a Plea in Intervention in the heirship proceeding, reasserting her common law marriage and renewing her request for a jury trial. On October 30, 2003, Schumann filed an objection to the probate court conducting a non-jury hearing on her plea. The probate court noted that at the time of the *in limine* hearing, Schumann did not have an affirmative pleading on file with regard to the heirship since Schumann had only filed an answer. Schumann's attorney responded that the answer could be construed as a plea in intervention since it requested a determination of the common law marriage issue. The probate court noted that Schumann had not filed an application to determine heirship or an application to appoint a personal representative of the estate. The probate court concluded that its prior finding that no common law marriage existed as a matter of law precluded a jury trial and denied the plea in intervention.

The probate court ultimately entered written orders reflecting its rulings on December 9, 2003. In the order regarding the *in limine* hearing, the court found that Schumann requested relief from the court involving the administration of the estate, thereby raising the issue of her standing. The court further found that Schumann failed to establish her claim of a common law marriage. As a result, the court dismissed Schumann's claims related to the administration of the estate.

In its order denying the plea in intervention, the probate court found that the only ground to support Schumann's plea in intervention was the re-urging of her common law marriage claim. The court further found that it had determined that Schumann was not married to Curtis as a matter of law. As a result, the court denied the plea in intervention.

Schumann timely filed this appeal complaining of both of the trial court's orders.

### DISCUSSION

Although Schumann presents four separate points of error in her brief, all of Schumann's issues hinge on whether the probate court's finding that Schumann was not Curtis's common law wife at the *in limine* hearing in the estate administration proceeding precludes Schumann from presenting the issue to a jury in the heirship proceeding.

Armstrong relies heavily on the contention that the proper procedure to determine standing in an estate administration proceeding is by conducting an *in limine* hearing. The cases on which Armstrong relies, however, exclusively involve estate administration proceedings. *See Womble v. Atkins*, 160 Tex. 363, 331 S.W.2d 294 (1960); *Sheffield v. Scott*, 620 S.W.2d 691 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.). These cases do not mention any pending heirship proceeding.

In *Womble*, the petitioner was seeking to set aside the probate of a 1945 will and to admit a 1952 will to probate. 331 S.W.2d at 295. The issue in the case was whether a release the petitioner had earlier executed, releasing the estate from any claims or demands that the petitioner could assert, barred her attempt to probate the 1952 will. *Id.* In those circumstances, the court held, "it has long been the established practice, where proper demand is made, to require one asserting a

right to probate a will to first establish an interest in the estate which would be affected by the probate of such will." *Id.* at 297. "The proper procedure is to try the issue of interest separately and in advance of a trial on the issues affecting the validity of the will." *Id.* at 298.

In *Sheffield,* the appeal involved the dismissal of a will contest. 620 S.W.2d at 692. The court noted, "before one may prosecute a proceeding to probate a will or contest such a proceeding, he must prove that he is a person interested in the estate." *Id.* at 693. "The Texas courts have established that the proper procedure to follow on the issue of interest of a contestant is to try the issue separately in an in limine proceeding and in advance of a trial on the issues affecting the validity of the will." *Id.* "Such an in limine proceeding is conducted before the court without a jury." *Id.; see also In re Estate of Hill,* 761 S.W.2d 527, 528–29 (Tex.App.-Amarillo 1988, no writ).

 Although each of these cases discuss the procedure to be followed in will contest or probate contexts, "[t]he same fundamental principle that bars an uninterested party from interfering in the probate of a will is equally important in the area of estate administration." *A & W Indus. v. Day,* 977 S.W.2d 738, 742 (Tex. App.-Fort Worth 1998, no pet.). "A mere interloper has no more right to intervene in the administration of a decedent's estate than he does in the admission of a decedent's will to probate." *Id.* "[A]llowing uninterested strangers to interfere in the administration of a decedent's estate by merely alleging a factual scenario that, if true, would qualify them as 'interested persons' … is repugnant to the public policy of this state." *Id.*

 The distinction between the foregoing cases and the instant case is that the foregoing cases do not mention a simulta-neously pending heirship proceeding. Section 21 of the Texas Probate Code states in pertinent part, "In all contested … proceedings in the … statutory probate court …, the parties shall be entitled to trial by jury as in other civil actions." TEX. PROB. CODE ANN. § 21 (Vernon 2003). In this case, the heirship proceeding was contested; therefore, Schumann had a statutory right to trial by jury on the issue of the existence of a common law marriage. The question then becomes whether Schumann's actions taken in the estate administration proceeding, which required the probate court to determine her standing by making a finding with regard to the common law marriage issue, preclude Schumann from presenting the issue to a jury in the heirship proceeding.

In *In re Evans' Estate,* the Beaumont court of appeals faced a similar issue. 198 S.W.2d 743 (Tex.Civ.App.-Beaumont 1946, no writ). In that case, the appellees filed an application to declare heirship in a pending estate administration proceeding. *Id.* at 743. The appellant filed a petition in intervention in the action to declare heirship, claiming that she was the surviving wife of the deceased. *Id.* The appellees answered the petition in intervention, asserting that res judicata barred the intervention because the trial court had earlier denied the appellant's application for letters of administration. *Id.* at 743–44. In denying the application for letters of administration, the trial court ruled that the appellant was not related to the deceased and had no interest in the estate. *Id.* at 744. The appellees' plea of res judicata was ultimately sustained. *Id.*

The Beaumont court stated that the question presented on appeal was whether the trial court's ruling in relation to the letters of administration which was "unsupported by any testimony in regard to the issues litigated" was "such a conclusive

determination as a matter of law that the appellant was not the surviving wife of [the] deceased, as to preclude her from presenting her claim for distribution of the assets of the estate upon a later trial on an action instituted to determine who are the heirs of the deceased." *Id.* at 745. The court noted, "The identical question presented here has been the subject of extensive litigation and the courts of the various states and of the United States are not in harmony thereon." *Id.* Addressing the out-of-state authorities, the court noted:

> The question has frequently arisen where a person has been appointed or refused appointment as administrator under the theory that he is or is not an heir or next of kin to the deceased, and this fact is afterwards controverted on the distribution of the estate. A great many courts, as is seen in the cases of *Hopkins v. Treasurer,* 276 Mass. 502, 177 N.E. 654, *In re Firle's Estate,* 191 Minn. 233, 253 N.W. 889, *Welch v. Flory,* 294 Mass. 138, 200 N.E. 900, 106 A.L.R. 813, *In re McClellan's Estate,* 31 S.D. 641, 141 N.W. 965, have held that an adjudication on an issue of heirship in connection with the appointment of an administrator is not conclusive on that question in subsequent proceedings for distribution of the estate, even though such issue was directly presented and decided in the former proceeding. In *Hopkins v. Treasurer, supra* [276 Mass. 502, 177 N.E. at 656], in referring to the petition for appointment as administrator, the court said: "One may show himself on a hearing on that nature to be an heir at law of a decedent and fail to show himself to be an heir at law for purposes of final distribution of the balance of the estate. The main purpose and ultimate end of that petition and the decree upon it are quite different from the main purpose and ultimate end of the proceedings here involved. It would be stretching the decree appointing an administrator, even though entered after a contest, quite beyond the justifiable limits, to hold that the persons entitled to share in the final distribution of the estate would be settled by the heirs at law there disclosed." In California the courts favor the view that an order of appointment should not be given conclusive effect on questions of heirship although those courts have held that such an adjudication is conclusive in a subsequent proceeding involving the same parties where the issue of heirship was litigated and directly decided the application for appointment. While the courts in the various states differ in their holdings when the issue of relationship was necessary to be decided and was decided after proper litigation, the authorities are practically unanimous in holding that when the issue was not litigated or it was not necessary to decide the issue in order to render judgment, then such a finding as to relationship is merely collateral and is not conclusive at a later suit to determine heirship.

*Id.* at 745–46. The Beaumont court held that the finding by the probate court that the appellant was not related to the decedent was merely collateral and incidental to the judgment denying appellant's application for letters of administration; however, the court cautioned:

> We do not go so far as to hold in this case that a judgment of a probate court granting or refusing letters of administration can not be conclusive on a question of relationship of an applicant to the deceased regardless of whether the issue was presented, was necessary for a decision on the appointment, and was litigated by the parties.

*Id.* at 747. The Beaumont court noted one other Texas authority had discussed the issue. *Id.* at 746.

■ In *Berger v. Kirby*, 135 S.W. 1122, 1126 (Tex.Civ.App.1911), *aff'd*, 105 Tex. 611, 153 S.W. 1130 (1913), the appellant contended that the probate court's order appointing M.W. Kirby as the administrator of the deceased's estate adjudicated the fact that the appellant was the wife of the deceased because the application stated that the deceased left appellant as his surviving wife. The appellate court rejected this argument asserting, "The issue of whether the appellant was the lawful wife of [the deceased] was neither tendered by the application of M.W. Kirby . . . , nor was the issue necessarily involved in the decision of the court in passing upon such application." *Id.* "[T]he rule is that the estoppel of a judgment extends only to the points directly involved in the action decided, and not to any matter which was only incidentally cognizable, or which came collaterally in question." *Id.* "This is true, even though the matter coming collaterally into question may have been judicially passed on." *Id.* "At most, the question as to whether or not the appellant was the wife of [the deceased] was only incidentally cognizable before the county court, and whatever adjudication there may have been in reference thereto was merely collateral and incidental, and not conclusive." *Id.* In discussing *Berger*, the Beaumont court in *In re Evans' Estate* commented:

> It seems to have been the court's opinion that even if the issue had been involved in the appointment of the administrator, the order still would not be res judicata on [the common law marriage] question, since whatever adjudication there may have been in reference thereto was merely collateral and incidental

to the main question of the right to administration.

*In re Evans' Estate*, 198 S.W.2d at 746.

■ The true issue before the probate court in the estate administration proceeding was whether the requested expenses should be paid. The issue of whether Schumann had standing to contest the payment was a collateral issue. To hold otherwise would deprive Schumann of her right to a jury trial on the contested issue of the existence of her common law marriage. If we accepted Armstrong's contention that Schumann waived her right to a jury trial by taking action in the administration proceeding, then expenses could never be challenged by a potentially interested party until after an heirship determination was made. The potentially interested party might forego any objections to preserve the right to a jury trial, and expenses might be paid that were not warranted, thereby depleting the estate. Given the unique posture of this case, we hold that the probate court's determination of Schumann's standing at the *in limine* hearing was a collateral matter and was not conclusive for purposes of the heirship proceeding. Accordingly, the probate court's ruling at the in limine hearing does not bar Schumann's right to seek a jury trial in the heirship proceeding.

### CONCLUSION

The trial court's order on motion in limine to determine standing is affirmed. The trial court's order denying Schumann's plea in intervention is reversed, and the cause is remanded to the probate court for further proceedings consistent with this opinion.