STATE EX REL. DONOVAN, PLAINTIFF, v. LEDWIDGE, DEFENDANT.

(No. 1,878.)

(Submitted October 29, 1902.   Decided October 29, 1902.)

*Rules of Supreme Court—Writ of Mandate—Motion to Quash —Court Stenographer—Attorney General—Copy of Transcript—Prepayment of Fees—Ministerial Duties.*

1.   Under Subdivision 2 of Rule II of the Supreme Court, when the court orders the writ of mandate to go, it decides the reasons set forth in the applica-

tion (which render it necessary that the writ should issue originally from the supreme court), to be sufficient, and a motion to quash not traversing the averments of the application nor setting out new matter in avoidance, admits as true the matters urged as reasons, and will not raise the question of the sufficiency of such reasons for reconsideration.

2.   Code of Civil Procedure, Sec. 373, provides ·that the stenographer must, upon demand, and payment of his fees, furnish to the attorney of a party to. any civil, cause, a transcript of the proceedings. *Held,* that the appropriate remedy to compel a stenographer to furnish such transcript is a writ of mandate, rather tnan an order to the stenographer by the trial court.

3.   Code of Civil Procedure, Sec. 1874, provides that an officer, when prosecuting an action on behalf of the state, shall not be required to pay or deposit any fee with any officer. The attorney general conducting a proceeding on behalf of the state demanded of the stenographer a transcript of his notes taken therein. *Held,* that it was the stenographer's ministerial duty to deliver them without demanding his fees in advance.

4.   The stenographer had entered into an agreement with a ·third party for the preparing of the transcript, under which he did not feel at liberty to deliver any of· the transcripts in his hands to the attorney general without the pay in advance. *Held,* that his legal duty could not be controlled by his contract with a third party.

5.   The assertion of the stenographer that the attorney general did not need the transcript for the preparation of a bill of exceptions for which it was demanded would not excuse the refusal to deliver it, since the raising or solving of that question was not delegated to the stenographer.

APPLICATION by the state, on the relation of James Donovan, attorney general, for a writ of *mandamus* to compel J. F. Ledwidge, stenographer of the district court of the Second judicial district in and for the county of Silver Bow, to furnish a transcript of certain proceedings. Writ granted.

*Mr. James Donovan, Attorney General,* for Relator.

*Mr. Jesse B. Roote,* for Defendant.

MR. JUSTICE PIGOTT delivered the opinion of the court.

The state of Montana, at the relation of its attorney general, has instituted this proceeding in· *mandamus* to compel the stenographer of Department II of the district court of Silver Bow county to furnish a copy, written out at length, of the testimony and proceedings upon a trial involving the validity of two supposed wills. The allegations contained in the application are to the effect that the state of Montana, by its attorney general, filed objections to the probate of two certain proposed wills of one Colbert, deceased, asserting that the wills pre-

sented were forged; that Colbert had died intestate, without heirs, and that the property of the decedent would escheat to the state; that a trial was had of the issues raised by the objections, at which many witnesses were examined, and much evidence received; that the trial resulted in favor of the state and against the proponents; that the proponents, in July, 1902, gave notice of their intention to move for a new trial, and duly served their proposed bills of exception in support thereof; that the court, by granting to the state thirty days' extension, enlarged the time within which the state might propose amendments to each of the bills; that the time for proposing amendments will expire with November 7, 1902, and that no further time can be granted by the court without the consent of the proponents, and that they have refused and still refuse to consent to any further enlargement; that the stenographer attended the trial and took full stenographic notes of all the testimony, evidence, and proceedings; that the attorney general, acting for the state, on August 1, 1902, demanded of the stenographer a copy of his notes, written out at length; that the stenographer had written the same out at length, and has in his possession copies thereof so extended, but that he refused and still refuses to deliver to the attorney general a copy without payment in advance by the state of $419.40, his alleged fees; that the attorney general did not have knowledge of the unqualified refusal of the stenographer until the 20th day of the present month, and that the stenographer has never written out and filed with the clerk of the trial court any of the objections, rulings, decisions, opinions, or exceptions taken by him; that neither of the proposed bills contains a full, true, and correct statement of the evidence and proceedings; and that the state is desirous of preparing amendments thereto before November 7th next, and that, to enable the attorney general to do so, it is indispensable that he have a copy of the proceedings so taken by the stenographer. The application sets forth as the reason why it is necessary that the writ should issue from this court instead of from the district court that, if application were made to the district court, it would be subject to the unavoidable delay in-

cident to the commencement, hearing, and trial of the same in such court, and that it could not be determined until after November 7, 1902; and that, if the decision in such court should be adverse to the state, and an appeal were taken to the supreme court, such appeal could not be heard here prior to to the 7th day of November next.

An alternative writ was issued, and the defendant was required to answer on yesterday, October 28, 1902. He moved that the writ be quashed on several grounds, the first being that the application does not set forth any sufficient reason why the writ should issue from the supreme court, instead of from the district court of Silver Bow county. Subdivision 2 of Rule II of this court requires, among other things, that the application for the issuance of the writ of mandate must set forth the reasons which render it necessary that the writ should issue originally from the supreme court, and that the sufficiency or insufficiency of the reasons so set forth will be determined by the court in awarding or refusing the writ. When we ordered the writ to go, we decided the reasons set forth in the application to be sufficient. The motion to quash admits as true the matters urged as reasons. If the defendant had traversed the averments, or pleaded new matter in avoidance, a different question would arise. The first ground of the motion is untenable.

The next contention is that the attorney general should have asked the district court of Silver Bow county for a rule or order requiring the defendant to furnish the copy demanded. In *State ex rel. Kranich* v. *Supple,* 22 Montana Reports, 184, (56 Pac. 20), we gave a kindred question some consideration. There the stenographer had refused to obey the command of Section 372 of the Code of Civil Procedure, which provides that "all objections made, the rulings, decisions and opinions of the court, and the exceptions taken during the trial, or hearing, must be written out at length, or printed in type, by the stenographer and filed with the clerk forthwith after the close of the trial or hearing," and the district court refused to order him to comply therewith. A careful reading of the opinion discloses the fact that this court did not deem the refusal of

the district court to require its stenographer to obey the statute a matter of importance; it held that the stenographer should have done the duty imposed upon him by statute, and that he is one of the persons to whom the writ may issue. Nor does *State ex rel. Dempsey* v. *Second Judicial District Court,* 24 Montana Reports, 566, (63 Pac. 389), support the defendant's contention. There the district court had ordered its stenographer to furnish to the defendant in a criminal case a copy of the evidence taken at the trial, to enable him to prepare bills of exceptions. This was done under the authority conferred by the last sentence of Section 373 of the Code of Civil Procedure, providing that, "if it appears to the judge that a defendant in a criminal case is unable to pay for such copy, the same shall be furnished him and paid for by the county." The stenographer did not obey, and this court was applied to for a writ of mandate to compel the stenographer to obey the order. We denied the application, for the reason that to punish the contempt, and so enforce obedience, was for the court which made the order, and not for this court. It is to be observed that the duty to furnish the copy was imposed by order of the court made in accordance with the statute, and was not a specific duty created by the statute without the intervention of the court or judge. In an *obiter* we further intimated the opinion that if the court or judge had refused, upon a proper showing, to enforce the order by contempt proceedings, this court would feel justified in compelling the stenographer to do his duty, but, until that remedy in the court below had been exhausted, we would not interfere. In *State ex rel. Moshner* v. *Wright,* 26 Montana Reports, 540, (69 Pac. 101), we held, it is true, that *mandamus* is not ordinarily the proper remedy to compel the clerk to issue an alias order of sale upon a foreclosure decree, for the reason that there is a plain, speedy, and adequate remedy by motion in the case itself; but that the court in which a judgment is entered is the primary forum to which application should be made for its enforcement, and that, if the clerk refuse to issue a writ of execution, he may, without resort to the extraordinary remedy of *mandamus,* be compelled, by order, to

perform the ministerial duty. The court has control of its process, and may, by order, require of its clerical officer performance of his duty in respect thereof. This remedy does not seem appropriate in such a case as the one now presented, where the attorney general insists that he is entitled, under the provisions of the statute only, to receive from the stenographer a transcript of the notes taken and extended by him. The statute invoked by the attorney general imposes the duty the performance of which is sought to be coerced. With the creation of this duty the court has nothing to do. Discharge of such duty is in no wise obedience to any order or judgment; it has no place in the substantial proceedings of the case. Indeed, we seriously doubt the existence of power in the district court to punish as for a contempt disobedience of its mere order that the stenographer deliver to the attorney general the transcript demanded by him.

Another ground of the motion to quash is that a full transcript of all the proceedings had upon the trial is not necessary to a settlement of the bill of exceptions, and therefore Section 1874 of the Code of Civil Procedure has no application; and the last ground argued is that the alleged facts set forth in the petition do not entitle the state to a writ of mandate.

Section 373 of the Code of Civil Procedure provides, among other things, that the stenographer must, upon request, furnish, with all reasonable diligence, to a party or his attorney in a civil cause in which he has attended the trial or hearing, a copy, written out at length or in narrative form, from his stenographic notes, of the testimony and proceedings upon the trial, upon payment, by the person requiring the same, of 5 cents per folio for the copy written out at length, and 7½ cents per folio for the copy written out in narrative form. Section 1874 of the same Code reads as follows: "The state or a county, or any subdivision thereof, or any officer when prosecuting or defending an action on behalf of the state or county, or subdivision thereof, is not required to pay or deposit any fee or amount to or with any officer during the prosecution or defense of an action. No officer so prosecuting or defending shall be taxed

with costs or damages, but such costs or damages, if any, shall be taxed to the state or county, as the case may be." We have already decided in *State ex rel. Donovan v. Second Judicial District Court,* 25 Montana Reports, 355, (65 Pac. 120), that the state had the right to appear and oppose the probate of the wills. The state was, therefore, and is, a party to the cause, action, or proceeding in the district court. The stenographer is an officer of that court, and the sums paid to him for copies are, by Section 373, *supra,* designated as "fees." Section 1866 of the Code of Civil Procedure declares that the legal fees paid to stenographers for *per diem* or for copies are necessary disbursements, which a party is entitled to include in his cost bill. The attorney general, acting for the state, has demanded a copy of the testimony, and the defendant has refused to deliver it to him without prepayment of the fees. From Sections 373 and 1874, when read together, it is manifest that the stenographer may not require the state, or its attorney general, to pay the amount of his fees in advance. The ministerial duty of the stenographer to furnish the transcript to the attorney general is equally manifest. Whether he is entitled, in such a proceeding, to fees from the state, is a question not here involved.

The motion to quash having been overruled, the defendant, by leave of court, filed his answer today. Therein he avers that he has never written out at length, or otherwise, the testimony or proceedings had upon the trial; that in June, 1902, the attorney general requested the defendant to prepare for him a transcript of the testimony and proceedings, and agreed to pay him the regular fees therefor; that, relying upon the promise of the attorney general, the defendant entered into a contract with one Deavitt, by which Deavitt agreed to transcribe the stenographic notes and write the testimony and proceedings at length in consideration of one-half of the fees allowed by law to be paid to him therefor upon delivery of the transcript to the attorney general; and that thereafter Deavitt, in compliance with the contract with the defendant, did prepare a typewritten tran-

script of the testimony and proceedings, but that the defendant did not prepare any part of the transcript, and does not own the same, and is not at liberty to deliver it to the attorney general.

From the evidence taken it appears that the defendant read and dictated to Deavitt from his stenographic notes all the testimony and proceedings taken at the trial, and that Deavitt printed the same upon a typewriting machine; that Deavitt delivered three copies to the defendant, and that the defendant now has these copies in his possession. He says, however, that he does not feel at liberty to deliver any one of them for the reason that the defendant and Deavitt agreed that no copy should pass from the possession of the defendant to the attorney general until the fees were paid. The defendant, a public officer, will not be permitted to avoid the performance of a duty enjoined upon him by law by showing that he and another person had made a contract under the terms of which the public officer promised to violate that duty. This court is not concerned with the respective rights of the defendant and Deavitt as between themselves. The assertion that the attorney general does not need the transcript for the purpose of aiding him in proposing amendments to the bills of exceptions may be disposed of by observing that the law has omitted to clothe the stenographer with the right or privilege of raising or solving the question, which must, necessarily, be decided by the attorney general, who has the legal right to a copy of the extended notes, and by him only.

It is therefore ordered that a peremptory writ of mandate issue as prayed for, and that the defendant make return thereof at 10 o'clock on Friday, the 31st day of October, 1902.

*Writ granted.*